## BENNETT COMMISSION COMPANY v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

February 13, 1937.

No. 31,040.

[1]Reported in 271 N. W. 468.

*M. L. Countryman, Jr., D. F. Lyons,* and *Conrad Olson,* for appellant.

*McMeekin & Quinn, Edward E. Cleary,* and *James E. Markham,* for respondent.

DEVANEY, CHIEF JUSTICE.

Action brought to recover damages in the sum of $10.45, alleged to be the amount by which freight charges assessed and collected by defendant on a mixed carload shipment of livestock exceeded those permitted by 1 Mason Minn. St. 1927, § 4872. 1 Mason Minn. St. 1927, § 4872, provides in part as follows:

"Every such company shall furnish at proper points designated by it, suitable cars for the transportation of live stock of all kinds, and shall transport the same at a rate not to exceed the highest rate and minimum weight charged by such company for any kind of stock in such car, except that the cattle rate and minimum weight will apply when by the use of same a lower charge results, and the cattle rate will apply when the actual weight exceeds the cattle minimum. * * * Any such company failing to comply with any provision of this section shall forfeit to the party aggrieved not less than $100, nor more than $500."

The shipment in question was consigned from Wadena, Minnesota, to plaintiff, Bennett Commission Company, by one H. A. Goetsch. It consisted of one bull, one cow, 19 calves, and 38 hogs. The shipping weight of the animals was 14,705 pounds. The freight charges assessed were $48.40. These charges were paid by plaintiff upon receipt of the shipment at South St. Paul.

Plaintiff in this action alleges that defendant in assessing freight charges violated § 4872, quoted above. The matter came on for trial

before the court without a jury on December 13, 1935. The court found for plaintiff. This is an appeal from the judgment entered.

But one question is presented: What is the meaning of the phrase "highest rate and minimum weight" as used in § 4872?

At the time the shipment involved was made defendant's lawfully published tariff on file with the Minnesota railroad and warehouse commission provided the following rates and minimum weights on *straight* carload livestock shipments of cattle and hogs from Wadena, Minnesota, to St. Paul, Minnesota:

| "Kind of stock (Straight carload) | Rate per 100 lbs. (Cents) | Minimum Weight (Pounds) |
|---|---|---|
| Cattle (including calves) | 22 | 22,000 |
| Hogs (in single-deck cars) | 23 | 16,500" |

These rates and minimum weights apply to shipments of livestock in cars 36 feet, 7 inches in length, which was the size of the car carrying this particular shipment.

Plaintiff's shipment contained both hogs and cattle. The rate for hogs is 23 cents per 100 pounds, which is higher than the cattle rate of 22 cents per 100 pounds. The minimum weight for hogs on a straight carload shipment is 16,500 pounds, which is lower than the cattle minimum weight of 22,000 pounds. It is plaintiff's contention that the phrase in the statute "highest rate and minimum weight" means that the defendant company in computing freight charges on a mixed carload must choose the kind of livestock contained in the shipment which carries the highest rate on 100 pounds and apply thereto the accompanying minimum weight. The reasoning is that the word "highest" in the phrase modifies only the word "rate" and has no other implication. So, in this case, it is claimed that defendant company must take the rate for hogs, 23 cents per 100 pounds, and apply thereto the accompanying minimum weight of 16,500 pounds which would result in an assessed charge of $37.95.

Defendant contends (and made its charge accordingly) that the phrase "highest rate and minimum weight," as used in the statute, means that rate and minimum weight which together produces the

highest charge; that the word "highest" does not modify only the word "rate" but rather modifies the entire phrase "rate and minimum weight." Thus the proper charge to be assessed the shipper is arrived at by taking the cattle rate of 22 cents per 100 pounds and applying it to the accompanying cattle minimum weight, 22,000 pounds, the result being a charge of $48.40 for the carload shipment in question.

The court below held in accord with plaintiff's contention that because the hog rate was higher than the cattle rate, when the respective minima are not considered, the hog rate and minimum weight was the "highest rate and minimum weight" within the meaning of the statute; and therefore appellant violated the statute by charging a rate in excess of that allowed by law when it applied the cattle rate to the cattle minimum weight and charged accordingly.

We believe that the trial court erred in its decision.

Both parties to this litigation agree that rate and minimum weight are inseparable. They differ, however, as to the nature and extent of this inseparability. Defendant contends that rate and weight are inseparable in the sense that the phrase "rate and minimum weight" is the equivalent of the word "charge," and therefore urges that the phrase "highest rate and minimum weight" must be construed as though it meant "highest charge." Plaintiff, on the other hand, admits the inseparability only to the extent of granting that once a particular rate is chosen, i. e., the rate per 100 pounds for a particular kind of stock, the minimum weight accompanying that particular rate must be used in computing the actual charge to be assessed.

The language of the statute, particularly the phrase in question here, is unfortunate. The briefs of counsel for both sides have been carefully prepared and have ably presented the problems created by the ambiguities in the statute. The argument for each side is persuasive. Neither interpretation is entirely devoid of merit.

However, we are constrained to the conclusion that the interpretation of the law as contended for by defendant is the proper one.

Section 4872 had its beginning in L. 1887, c. 17. It read originally:

"That the charge and rate of such cars of mixed livestock for transportation, as aforesaid, may be the highest rate for transportation of either class or kind of such stock so transported in said mixed carloads by said railroad company."

As so worded, it was carried into the statutes of 1894 as § 2712. In the revision of 1905 it became § 2025, and the language was changed so that it then read:

"And shall transport the same at a rate not to exceed the highest rate charged by such company for any kind of stock in such car."

In L. 1915, c. 254, the statute was amended. The amendment consisted of inserting the words "and minimum weight" after the phrase "not to exceed the highest rate," and adding the clause "except that the cattle rate and minimum weight will apply when by the use of same a lower charge results." In L. 1919, c. 301, this act was further amended by the addition of the following provision:

"and the cattle rate will apply when the actual weight exceeds the cattle minimum."

In 1931 there was an additional amendment with which we are not concerned here.

It is apparent that § 4872 from its inception was intended to deal with *charges* assessed by a carrier in cases of shipments of mixed carloads of livestock and not merely with *rates,* as distinguished from *charges* computed by reference to rates and weights.

As originally enacted the statute permitted the *"charge* and *rate"* to be the highest rate for any kind of stock contained in the shipment. As we view it, "charge and rate" could only have been intended to mean the *charge* per carload as finally assessed to the shipper. There is no reasonable basis for the claim made by the plaintiff herein that the words "charge" and "rate" were not intended to be synonymous as used in this portion of the statute. No sound argument has been advanced in support of the claim that these words as used had two different meanings. All things con-

sidered, the proper construction of this phrase indicates the legislature to have intended in thus speaking to provide as to the *charges* the carrier was to be allowed to make, and it cannot be successfully maintained that by the use of the additional word "rate" the legislature intended otherwise.

The fact that after the law was revised and that as it now reads the word "charge" is omitted and the word "rate" only remains does not, in our opinion, warrant any different construction than that already indicated. As used, the term "rate" means nothing more or less than *charge* as computed on the basis of rate in cents per 100 pounds as applied to the applicable minimum weight. The discussion in support of this construction will appear later with reference to the correct interpretation of the phrase "highest rate and minimum weight" upon which the whole issue in this case hinges.

It is to be noted that prior to the amendment of the statute in 1915 the phrase "and minimum weight" did not appear. The law merely provided that the rate charged should not "exceed the highest rate" for any kind or class of livestock in the carload. Notwithstanding this omission, it appears reasonably clear that the proper construction of the word "rate" as used in this connection also meant *charge* as computed on the basis of rate in cents per 100 pounds applied to the corresponding minimum weight. There is no such thing as a rate apart from its minimum weight. As stated in Bennett Comm. Co. v. N. P. Ry. Co. 195 Minn. 7, 10, 261 N. W. 593, 594:

"Minimum weight is meaningless except as connected with a rate. The application of any particular rate is inseparably tied up with a minimum weight. Consequently, in cases of mixed livestock shipments, it is agreed that although the railroad is authorized to charge the highest rate and minimum weight charged for *any* kind of stock in a car, the two must not be separated."

But the relationship between rate and minimum weight is not merely that of inseparability. It is more. Minimum weight is a part of the rate itself.

"The maximum or minimum weight of a carload is not something *affecting* the rate, but is in fact a part of the rate, a factor which is just as essential to a correct statement of the rate as is the rate per 100 pounds itself." Rail & River Coal Co. v. B. & O. R. Co. 14 I. C. C. 86, 90.

See also Three Forks Portland Cement Co. v. C. B. & Q. R. Co. 129 I. C. C. 107.

Thus a reduction in minimum weight without a corresponding increase in the rate per 100 pounds is tantamount to a reduction in the rate itself. Georgia Fruit Exch., v. Southern Ry. Co. 20 I. C. C. 623.

Minimum weight being a part of rate, and no more, a reasonable interpretation will allow only one meaning to the word "rate," namely, *charge* as finally computed on the basis of cents per 100 pounds and minimum weight, and assessed to the shipper. It is not to be supposed that the framers of the law intended by the use of the term "rate" only cents per 100 pounds without reference to and unaffected by the accompanying minimum weight. So to hold would be to disregard the degree of relationship between rate and weight even though it is conceded that after rate in terms of cents per 100 pounds is determined the accompanying minimum weight must be applied in determining the charge to be assessed. A degree of relationship would then be recognized in enforcing the provisions of the statute, but would not be recognized for the purpose of interpreting it with reference to probable legislative intent. The conclusion is that the framers of the law intended to impose on the carriers a limitation on the *charges* that they could assess to a shipper who shipped a mixed carload of livestock, and that in so doing they had in mind by the use of the term "rate" the *charge* as determined by rate, in cents per 100 pounds, applied to the corresponding minimum weight.

The statute, then, prior to the amendment of 1915, provided in effect that a carrier should transport a carload of mixed livestock at a *charge not to exceed the highest charge that the carrier would be entitled to for a straight carload shipment of any kind of stock*

*contained in such car.* For example, if the shipper consigned a mixed carload consisting of sheep, hogs, and cattle, and the highest *charge* for a straight carload of any one of these kinds of stock computed in cents per 100 pounds as applied to the corresponding minimum weight was that for a straight carload shipment of cattle, that was the maximum charge that could be assessed to the shipper for transportation of the carload under the statute.

The only change in the law made in 1915 with which we are concerned here is the insertion of the words "and minimum weight" after the phrase "not to exceed the highest rate." The statute then provided that the carrier should transport a mixed carload of livestock "at a rate not to exceed the highest rate and minimum weight charged by such company for any kind of stock in such car." See L. 1915, c. 254.

As we view it, this change in the statute was intended to make it clear that the carrier in determining the "highest rate" was to do so with reference to an accompanying minimum weight and to assess its charges accordingly. In other words, it was undoubtedly meant to have the effect of eliminating any possible interpretation that the charges intended to be governed were other than those computed on the basis of *rate* and *weight*. It is unreasonable to suppose that the amendment was intended to change the statute so that it dealt not with charges assessed by the carrier, but only with the rates in terms of cents per 100 pounds apart from the effect thereon of the applicable minimum weights; and we hold that "rate and minimum weight" as it now appears in the statute means simply *charge* as computed and assessed. The word "highest" as used in the statute, therefore, necessarily modifies the entire phrase "rate and minimum weight."

But plaintiff argues that the rate referred to in the statute means only rate in terms of cents per 100 pounds; that in determining which is the "highest" rate and minimum weight we must first choose the stock contained in the car which carries the highest price for transportation per 100 pounds without reference to the effect thereon of the corresponding minimum weight; that the minimum weight attached to the particular price in cents per 100 pounds is

not to be considered except in computing the final charge after the "highest rate" in cents per 100 pounds is chosen.

The contention is not sound. The difficulty with this contention and with the trial court's decision is that they look only to the rate in cents per 100 pounds without regard to the effect of the particular corresponding minimum weight for the purpose of determining what the statute prohibits the carrier from doing, but in determining whether the statute has been violated, they compare the *charges* resulting from application of rate to minimum weight and disregard the comparison of the rates themselves. For example, in this case, under this view, the hog rate of 23 cents per 100 pounds is found to be higher than the cattle rate of 22 cents per 100 pounds. Then the cattle rate is found to *exceed* the hog rate by computing what would be the *charges* for both cattle and hogs on a straight carload basis with reference to the corresponding minimum weights and comparing these *charges*. The result is that the hog rate is treated as higher than the cattle rate in fixing a maximum and then is treated as lower than the cattle rate in determining whether the maximum has been exceeded. The inconsistency is that in *construing* the statute the hog rate is considered to be the "highest rate" and in *applying* the statute the *cattle rate* is held to be even higher and therefore must be considered as exceeding the hog rate. It seems clear that if the hog rate is determined to be the highest rate and minimum weight on any kind of stock in a carload of hogs and cattle within the meaning of the statute, then certainly the cattle rate and minimum weight cannot be regarded as *exceeding* the hog rate and minimum weight.

The statute clearly indicates an intention on the part of the legislature to permit a choice of "rates." The limitation on that choice is that the "rate" chosen cannot exceed the "highest rate and minimum weight" charged for any kind of stock in the car. If the minimum weight is to be ignored in *interpreting* the phrase "highest rate and minimum weight" and the hog rate is then found to be the "highest rate," then, under plaintiff's interpretation, the defendant cannot be guilty of violating the statute by employing the cattle rate in cents per 100 pounds because by the very terms of the

act the carrier is entitled to select any "rate" which does not exceed that found to be the highest rate within the meaning of the statute. Compared on the basis of cents per 100 pounds only, the cattle rate is obviously lower than the hog rate and therefore would be a permissible choice even under plaintiff's contention.

The more reasonable interpretation and the one to which we subscribe gives to the carrier a choice, but a choice of *charges* to be assessed to the shipper for the transportation of a mixed carload of livestock. The carrier may make any charge as long as it is not greater than the charge would be for the transportation of any kind of stock contained in the car if such stock were shipped in a straight carload. This construction is consonant with the general understanding and interpretation of the statute prior to the occasion of this case:

"Section 4872, before it was amended in 1931, permitted a railroad to charge for a mixed livestock shipment the highest rate as applied to the accompanying minimum weight charged for *any* kind of stock in the carload shipment. Thus where a shipment contained livestock of all three kinds (sheep, hogs, and cattle) a railroad could choose any one of the three rates (cattle rate 22 cents, hog rate 23 cents, or sheep rate 24.5 cents), apply it to the minimum weight which corresponded to the rate it chose, and charge accordingly. Naturally the rate which when applied to its corresponding minimum weight would yield the most to the railroad was most apt to be charged." Bennett Comm. Co. v. N. P. Ry. Co. 195 Minn. 7, 10, 261 N. W. 593, 594.

The view we have taken of the statute is not inconsistent with legislative purpose. The act was passed primarily to eliminate discrimination. Specifically, the desideratum was to compel the carrier to observe a relationship between rates on mixed carloads of livestock and those on straight carloads of livestock. The statute does not represent an attempt to fix a rate or a measure by which rates for mixed carload shipments are to be determined. As construed herein, the purpose of the statute is not thwarted and the terms thereof are consistent with themselves.

On the other hand, were we to adopt the view contended for by plaintiff the shipper would be given an undue advantage. By including a sheep or a hog in a straight carload shipment of cattle, in certain instances, the shipper could escape the minimum weight tariff provisions on straight carload shipments. The language in the prior decision of Bennett Comm. Co. v. N. P. Ry. Co. 195 Minn. 7, 10, 261 N. W. 593, 594, with reference to the 1931 amendment to the statute, is peculiarly applicable herein:

"We do not believe, however, that the legislature intended by its amendment to place a premium on mixed shipments; that is, the legislature did not intend to give a shipper an advantage if he included in his shipment a single head of cattle weighing in excess of 400 pounds; nor did the legislature intend to make it advantageous to the shipper to include one sheep or one hog in. a shipment of cattle."

From what has been said herein it is apparent that the defendant railroad did not violate 1 Mason Minn. St. 1927, § 4872, in assessing charges to plaintiff for transporting the carload of cattle and hogs on the basis of the cattle rate of 22 cents per 100 pounds as applied to the cattle minimum weight of 22,000 pounds. Hence there is no question of defendant's liability for damages, and plaintiff's attorneys are not entitled to fees under the statute.

In accordance with the foregoing opinion, the judgment of the lower court should be and the same hereby is reversed.

Mr. Justice Stone took no part in the consideration or decision of this case.

Mr. Justice Peterson, not having been a member of the court when the case was argued and submitted, took no part in its consideration or decision.