## GREAT NORTHERN RY. CO. v. ARMOUR & CO.

### No. 47048.

District Court, N. D. Illinois, E. D.
March 15, 1939.

Winston, Strawn & Shaw, of Chicago, Ill., J. H. Mulally of St. Paul, Minn. (Guy A. Gladson and Bryce L. Hamilton, both of Chicago, Ill., of counsel), for Great Northern Ry. Co.

Charles J. Faulkner, Jr., and Paul E. Blanchard, both of Chicago, Ill., for Armour & Co.

IGOE, District Judge.

Plaintiff, Great Northern Railway Company, brought this suit against Armour and Company, defendant, to enforce payment of alleged undercharges in freight aggregating $130.69 on 21 cars loaded in part with fresh meat and in part with packing house products, and shipped by defendant from Spokane, Washington, to San Francisco, California, during 1935 and 1936. Trial by jury was waived by stipulation filed with the clerk of the Court, and the case was submitted upon the complaint and answer and a stipulation of facts.

There were two common-carrier rail routes from Spokane to San Francisco. One route was comprised of the line of the Spokane, Portland & Seattle Railway extending from Spokane southwesterly through Wishram, Washington to Portland, Oregon, and the line of the Southern Pacific Company extending south from Portland to San Francisco. The other route was made up of the line of plaintiff extending from Spokane southwesterly to Wishram (a point 106 miles east of Portland), the line of the plaintiff extending south from Wishram to Bieber, California, and the line of the Western Pacific Railroad Company extending south from Bieber to San Francisco. The shipments were made by defendant, as consignor, under bills of lading in which it agreed to pay the freight charges, and moved in accordance with defendant's instructions over the route of the plaintiff and the Western Pacific through Bieber to San Francisco, where they were delivered to the consignees.

Defendant paid plaintiff for the transportation of the shipments the sum of $6,835.06. Plaintiff claims that under the tariff schedules of the plaintiff and the Western Pacific on file with the Interstate Commerce Commission there accrued on the shipments charges aggregating $6,-

965.75. Defendant contends the charges paid by it were the full amount due under the tariffs. The sole question presented is one of tariff construction.

■■ The charges sought to be collected are those claimed due for interstate transportation by rail under tariffs filed with the Interstate Commerce Commission pursuant to the requirements of the Interstate Commerce Act, § 6, 49 U.S.C.A. § 6, and the action is, therefore, one arising under a federal law regulating commerce, and this Court has original jurisdiction under Section 24(8) of the Judicial Code, 28 U.S.C.A. § 41(8). Louisville & Nashville R. Co. v. Rice, 247 U.S. 201, 38 S.Ct. 429, 62 L.Ed. 1071; Pillsbury Flour Mills Co. v. Great Northern Ry. Co., 8 Cir., 25 F.2d 66, 67. There being no administrative question of fact presented, this Court has jurisdiction to construe the tariffs without a prior finding by the Interstate Commerce Commission. Brown & Sons Lumber Co. v. Louisville & N. R. Co., 299 U.S. 393, 397, 57 S.Ct. 265, 81 L.Ed. 301; Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U.S. 285, 290, 42 S.Ct. 477, 66 L.Ed. 943.

There are three tariffs involved, one known as Gomph's I. C. C. No. 1185, another as Henry's I. C. C. No. 402, and a master tariff known as the Western Classification. Rates were provided for in the Gomph and Henry tariffs. The Henry tariff named a rate of 51 cents on fresh meat and a rate of 36½ cents on packing house products from Spokane to Portland, and the Gomph tariff named a rate of 63 cents on fresh meat and a rate of 36 cents on packing house products from Portland to San Francisco. All rates are stated in amounts per hundredweight.

The decisive question in this case is the meaning of a rule in Item 135(b) of the Gomph tariff which provided: "Except where through rates [i. e., joint through rates] are specifically published from * * * Spokane, Wash. on the Great Northern Railway, rates named in this Tariff from * * * Spokane, Wash., on the Spokane, Portland & Seattle Railway, to * * * points on the lines of the Western Pacific R. R. * * * made by combining the rates to or from Portland, Ore., as named in this Tariff, with the rates beyond Portland, Ore., in other tariffs lawfully on file with the Interstate Commerce Commission, will also apply from * * * Spokane, Wash., on the Great Northern Railway, in connection with the Western Pacific R. R. * * * via Bieber, Cal."

The parties agree that there were no joint through rates from Spokane to San Francisco on fresh meat or packing house products, and that the rates applicable via the route through Portland as well as the rates over the route through Bieber were what are commonly referred to as combination through rates. See St. Louis Southwestern Ry. Co. v. United States, 245 U.S. 136, 139, 140, note 2, 38 S.Ct. 49, 62 L.Ed. 199.

The Gomph and Henry tariffs each contained, as a part of the items naming the rates, a regulation on mixed carloads of fresh meat and packing house products which provided that such shipments would be subject to a minimum charge based on 21,000 pounds at the fresh meat rate. Each of these tariffs also contained on its title page the following statement: "Governed, except as otherwise provided herein, by Western Classification." The Western Classification contained a regulation providing that mixed carload shipments of fresh meats and packing house products might be shipped as provided for straight carload shipments at their respective carload rates, subject to a minimum charge of 21,000 pounds at the fresh meat rate.

The parties agree that if the shipments had moved via Portland the following minimum charges per car would have been applicable under the regulations on mixed shipments in the Gomph and Henry tariffs:

Spokane to Portland: 21,000 pounds at fresh meat rate of 51 cents.... $107.10
Portland to San Francisco: 21,000 pounds at fresh meat rate of 63 cents ......................... $132.30

The shipments, however, did not move via Portland, and defendant contends that the regulations on mixed shipments in the Gomph and Henry tariffs did not apply because Item 135(b) of the Gomph tariff provided that the rates via Portland would also apply via Bieber, but did not provide that the minimum charges per car applicable on traffic moving via Portland would also apply on shipments passing through Bieber. Defendant relies upon the provision on the title pages of the rate-naming tariffs which stated that those tariffs would be governed by the Western Classification "except as otherwise provided herein." It says that the Henry tariff provided

therein a minimum charge for a shipment from Spokane to Portland, that the Gomph tariff provided therein a minimum charge for a shipment from Portland to San Francisco, but that neither tariff provided therein a minimum charge for shipments moving via Bieber. It argues that since the rate-naming tariffs did not provide otherwise therein for shipments moving via Bieber, the Western Classification comes into play, and that the minimum charge provided in the Classification applies to the through movement. The basis for this argument is a contention that the word "rates," as used in Item 135(b) of the Gomph tariff, means the rate figures stated in cents per hundredweight, and does not include regulations prescribing minimum charges per car. Plaintiff, on the other hand, contends that each of the two rate-naming tariffs contained its own minimum charge per car, that the regulations prescribing minimum charges per car in the rate-naming tariffs are part of the rates named in those tariffs, and that the minimum charges are, therefore, included within the meaning of the word "rates," as used in Item 135(b) of the Gomph tariff. The tabulation in the footnote[1] sets forth the contentions of the parties with respect to a representative shipment.

Plaintiff first computes the charges under the Henry tariff from Spokane to Portland on the basis of the actual weights of the commodities. This results in charges of $120.17, which are more than the minimum charge provided for in the Henry tariff. Plaintiff next computes the charges under the Gomph tariff from Portland to San Francisco on the basis of the actual weights. This computation results in charges of $124.47, which are less than the minimum charge of $132.30 provided for in the Gomph tariff. The total charges for the through movement via Bieber are obtained by adding the charges from Spokane to Portland based on the actual weights and the minimum charge from Portland to San Francisco, which results in total charges of $252.47.

Defendant computes the charges for the through movement in one calculation, and contends that the total charges so obtained ($244.64) are subject only to the minimum charge of $239.40 provided for in the Western Classification. This method of calculation produces through charges exceeding the minimum charge in the Western Classification, and is based on the contention that plaintiff and the Western Pacific in Item 135(b) of the Gomph tariff adopted for the route through Bieber the numerical rate figures in the Henry and Gomph tariffs applicable via Portland, but did not adopt the minimum charge regulations contained in the same tariffs.

The word "rate" has a variety of meanings, and its meaning in a particular

1 Plaintiff's Contention

Spokane to Portland:

| | | | |
|---|---|---|---|
| Fresh meat | 4,677 lbs. at 51¢ | $ 23.85 | |
| Packing house products | 26,390 lbs. at 36½¢ | 96.32 | $120.17 |
| | | 120.17 | |
| Minimum charge per car | 21,000 lbs. at 51¢ | 107.10 | |

Portland to San Francisco:

| | | | |
|---|---|---|---|
| Fresh meat | 4,677 lbs. at 63¢ | 29.47 | |
| Packing house products | 26,390 lbs. at 36¢ | 95.00 | |
| | | 124.47 | |
| Minimum charge per car | 21,000 lbs. at 63¢ | 132.30 | 132.30 |
| Total charges Spokane to San Francisco | | | 252.47 |

Defendant's Contention

Spokane to San Francisco:

| | | | |
|---|---|---|---|
| Fresh meat | 4,677 lbs. at $1.14* | 53.32 | |
| Packing house products | 26,390 lbs. at 72½¢** | 191.32 | |
| | | 244.64 | 244.64 |
| Minimum charge per car | 21,000 lbs. at $1.14 | 239.40 | |
| Total charges Spokane to San Francisco | | | 244.64 |

\* Combination rate of 51 cents to Portland and 63 cents beyond.

\*\* Combination rate of 36½ cents to Portland and 36 cents beyond.

instance depends to a large extent upon the context in which it is used. One of the established meanings given in Webster's New International Dictionary is "a charge, payment, or price fixed according to a ratio, scale, or standard." See, also, 52 C.J. 1140, and Lothrop v. Spokane, P. & S. Ry. Co., D.C.Or., 10 F.2d 225, 229. This Court in United States v. Chicago & Alton Ry. Co., 148 F. 646, 647, said: "The word 'rate,' as used in the interstate commerce law, means the net cost to the shipper of the transportation of his property; that is to say, the net amount the carrier receives from the shipper and retains." In Lothrop v. Spokane, P. & S. Ry. Co., supra, the Court said that "a prescribed rate may consist of a variety of elements, such as * * * the rules and regulations accompanying the tariff," and added that "In order to find the rate, all the elements which produce it must be taken into account." [10 F.2d 229.] In Bennett Commission Co. v. Northern Pacific Ry. Co., 199 Minn. 179, 271 N.W. 468, 471, the Supreme Court of Minnesota, in construing the words "highest rate and minimum weight" in a state rate statute, said: "Minimum weight is a part of the rate itself. * * * Minimum weight being a part of rate, and no more, a reasonable interpretation will allow only one meaning to the word 'rate'; namely, charge as finally computed on the basis of cents per 100 pounds and minimum weight."

The Interstate Commerce Commission in a series of decisions dating from the year 1908 has held that a tariff regulation prescribing a minimum weight or minimum charge for a carload shipment is a part of the carload rate. Rail & River Coal Co. v. Baltimore & O. R. Co., 14 I.C.C. 86, 90; Lull Carriage Co. v. Chicago, K. & S. Ry. Co., 19 I.C.C. 15, 16; Georgia Fruit Exchange v. Southern Ry. Co., 20 I.C.C. 623, 630; Timmons v. Baltimore, C. & A. Ry. Co., 55 I.C.C. 495, 498; Wheler Co. v. Director General, 59 I.C.C. 699, 701; Three Forks Portland Cement Co. v. Chicago, B. & Q. R. Co., 129 I.C.C. 107, 116. In the case first cited the Commission said: "The maximum or minimum weight of a carload is not something affecting the rate, but is in fact a part of the rate, a factor which is just as essential to a correct statement of the rate as is the rate per 100 pounds itself." Plaintiff's contention is thus fortified by a number of decisions of the tribunal with which the tariffs were filed.

By Item 135(b) of the Gomph tariff plaintiff and the Western Pacific provided that the rates from Spokane to points on the Western Pacific made by "combining the rates" to and beyond Portland would also apply over the route through Bieber. This Court believes that the word "rates," as used in that tariff item, must be construed to include the minimum charges per car as a part of the rates, and that the combination of rates to and beyond Portland is not the sum of the rate figures stated in cents per hundredweight, but is the sum of the charges under the Henry tariff to Portland ($120.17) and the charges under the Gomph tariff beyond Portland ($132.30). Each rate factor is subject to and governed by its own minimum charge per car, which is a part of the rate; and where, as in the case of the factor from Portland to San Francisco, the car earnings based on the actual weights of the commodities are less than the minimum charge, the minimum charge is the rate.

One authority, Atlantic Coast Line R. Co. v. Atlantic Bridge Co., 5 Cir., 57 F.2d 654 655, is cited by defendant. In this case the Court said that if tariffs "are ambiguous, or permit of two meanings, the shipper may construe them in the most favorable way to himself which the terms permit." But the tariffs here involved are not, when fairly and reasonably construed, ambiguous or duplicitous in meaning under the above-cited authorities. The rule of construction applicable here is that stated in Western Grain Co. v. St. Louis-San Francisco Ry. Co., 5 Cir., 56 F.2d 160, 161: "Further, tariffs having as they do the effect of law, the language in them must be construed fairly and reasonably, in accordance with the meaning of the words used, and not distorted or extended by forced or strained construction."

The Court has adopted the findings of fact submitted by the parties, and has entered the following conclusions of law:

1. The minimum charge regulation in the Western Classification was not applicable to the shipments involved in this case.

2. The shipments involved in this case were governed by the minimum charge regulations contained in Gomph's tariff I. C. C. No. 1185 and Henry's tariff I. C. C. No. 402.

3. The minimum charge per car provided for in said Henry tariff was an inseparable part of the rates named in said

968

tariff from Spokane to Portland; and the minimum charge per car provided for in said Gomph tariff was an inseparable part of the rates named in said tariff from Portland to San Francisco.

4. The applicable rates from Spokane to San Francisco on the shipments involved in this case were the sum of the charges under said Henry tariff from Spokane to Portland and the charges under said Gomph tariff from Portland to San Francisco.

5. Defendant is liable to plaintiff for undercharges on the shipments involved in this case aggregating $130.69, and also for costs of suit.