W. P. BROWN & SONS LUMBER CO. et al. *v.* LOUIS-
VILLE & NASHVILLE RAILROAD CO. et al.

No. 100.   Argued December 8, 1936.—Decided January 4, 1937.

394

*Mr. J. V. Norman* for petitioners.

*Mr. Elmer A. Smith,* with whom *Mr. J. Blakey Helm* was on the brief, for respondents.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

W. P. Brown & Sons Lumber Co. and other shippers brought in the Interstate Commerce Commission a complaint under § 16 of the Interstate Commerce Act, seeking reparation for alleged overcharges on shipments of lumber and other forest products taking lumber rates. They were awarded damages in the proceedings known as Wausau Southern Lumber Co. *v.* Alabama Great Southern R. Co., 142 I. C. C. 521; 182 I. C. C. 731. The Louisville & Nashville Railroad and some other carriers refused to comply with the order. Then this suit was brought in the federal court for western Kentucky to recover the amounts awarded against them. The case was heard on demurrers to the amended petition and to certain paragraphs of the amended answer. The demurrer to the petition was sustained, and that to the answer overruled, on the ground that the award was founded upon an erroneous construction of the so-called "Jones" or "Combination Rule" in the tariffs. The parties declining to plead further, judgment was entered dismissing the petition, 7 F. Supp. 593.

That judgment was affirmed by the Circuit Court of Appeals, 82 F. (2d) 94. We granted certiorari because of conflict with the decision of the Court of Appeals of the District of Columbia in *Baltimore & Ohio R. Co.* v. *Domestic Hardwoods, Inc.,* 62 App. D. C. 142; 65 F. (2d) 488.

The shipments involved were from points in the South and Southwest to points North. For such shipments there have long been commonly available over connecting lines more than one, and often many, through routes from each point of origin to destination. The Interstate Commerce Act does not require that the rates on all routes shall be the same. Nor does it require that there be on each route a joint through rate. Sometimes, none of the tariffs for the several available routes specifies a joint through rate. Where no joint rate is specified, the tariffs for the through routes commonly provide that the through rate shall be the sum of the local rates of the several carriers contributing to the movement.[1] In 1918, the Director General of Railroads made, by General Order No. 28, a percentage increase of lumber rates in southern territory, limited to 5 cents per 100 pounds. Thus, a joint through rate could not be increased more than 5 cents. But when the lumber moved on a combination through rate, the 5-cent limit was applied to each factor in the combination. The result was that on combination through routes the increase was often doubled, or tripled. To avoid such a result, the so-called "Jones"

---

[1] Section 6, (1) of the Interstate Commerce Act provides: "If no joint rate over the through route has been established, the several [connecting] carriers in such through route shall file, print, and keep open to public inspection as aforesaid, the separately established rates, fares, and charges applied to the through transportation." Concerning through rates, see *St. Louis Southwestern Ry. Co.* v. *United States,* 245 U. S. 136, 139, 140, note 2.

or "Combination Rule" was devised in February, 1919. Ever since, it has been commonly incorporated in tariffs.[2]

The question for decision is whether the "Combination Rule" applies to the shipments here involved. If it does not, there is no cause of action. If it does, the award was correct. The rule provides:

"Where no published through rates are in effect from point of origin to destination on lumber . . . , carloads, and two or more commodity rate factors . . . are used in arriving at the through rate for a continuous rail shipment thereof, such through rate will be arrived at in the following manner: . . . " [Then follows a formula.]

When applied to the combination rate specified in the tariff, the formula effects a reduction thereof. While the combination rate itself is ordinarily, if not always, higher than the joint through rate, the effect of applying to it the Combination Rule would not necessarily produce equality in rates on the several routes. It might make the combination through rate lower than the published joint through rate. This is true as to many of the shipments here involved. The amended answer gave an example: Laurel, Mississippi, is a typical lumber shipping point; and Columbus, Ohio, a typical destination. The published through joint rate from Laurel to Columbus, applying via each of the several originating carriers at that point, was 43 cents per 100 pounds. A combination

---

[2] B. T. Jones' Tariff 228, I. C. C. U. S. 1, § 4. In Wausau Southern Lumber Co. v. Alabama Great Southern R. Co., 142 I. C. C. 521, 524, the Commission states: "The combination rule was originally published by the director general about seven months after the issuance of General Order No. 28, as an emergency tariff provision to avoid a double increase on certain commodities moving on combination rates, the separate factors of which had been increased by specific amounts. Shortly after the general increase of 1920 the rule was amended substantially to reflect the increases then authorized. It was subsequently further amended to reflect the general reduction of 1922, and is still in effect."

rate for the movement over other routes, unaffected by the Combination Rule, was 43½ cents. If the combination rate were subjected to the Combination Rule, the rate over the combination route would be 40½ cents. Thus the combination rate would be much less than the published joint through rate.

Each of these shipments here involved might have been made over a route for which a joint through rate from point of origin to destination had been published. Instead, the shipment was made over a route for which the rate specified in the tariff was a combination rate. In some instances the route had been designated by the shipper.[3] The carriers exacted the full combination rate. The shippers made reclamation, on the ground that the Combination Rule applies in every case where no joint through rate has been published over the route selected for the movement. The Commission sustained the shippers' claim.

*First.* The rule declares that the prescribed formula is to be applied "where no published through rates are in effect from point of origin to destination." The language used is not technical. The meaning of the words is clear. There is no ambiguity. The construction of these railroad tariffs presents, therefore, a question of law, not differing in character from those presented when the construction of any other document is in dispute. *Great Northern Ry. Co.* v. *Merchants Elevator Co.,* 259 U. S. 285, 291. As, in each instance, there was available some through route from point of origin to destination for

---

[3] In some instances the claim rests upon a charge of misrouting. That is, the route not having been designated by the shipper, it was the duty of the initial carrier to select the route over which the rate was lowest. Compare *Northern Pacific Ry. Co.* v. *Solum,* 247 U. S. 477, 482. The carrier did not fail in that duty unless the Combination Rule applied. That is, there was no misrouting if the Commission's construction was erroneous.

which joint through rates had been published, the rule, by its terms, has no application. We so hold despite the construction given to the rule by the Commission.

*Second.* The shippers contend that the construction given to the rule by the Commission is conclusive, because preliminary resort to the Commission was necessary. *Texas & Pacific Ry. Co.* v. *American Tie & Timber Co.*, 234 U. S. 138; *Loomis* v. *Lehigh Valley R. Co.*, 240 U. S. 43; *Northern Pacific Ry. Co.* v. *Solum*, 247 U. S. 477. They argue that such preliminary resort was necessary, since the interpretation and application of the rule involved (a) the exercise of sound administrative discretion as to technical and intricate matters of tariff application and the relation of tariffs one to another; (b) the reasonableness of a practice of routing as between higher and lower-rated routes, and (c) uniformity in the application of rates, which is the paramount purpose of the Interstate Commerce Act. But the argument is not sound. To determine whether the rule was applicable to the several shipments does not call for, or indeed permit, the consideration of any of these matters. The simple question for decision, as to each shipment, is whether there existed "published through rates" "in effect from point of origin to destination." The determination of that question requires ordinarily merely the examination of the tariffs.[4] The enquiry would, in all respects, be like that commonly made by courts when called upon to construe and apply any other document. This is not a case like *Standard Oil Co. (Indiana)* v. *United States,* 283 U. S. 235, 238, 239, where there was required "consideration of matters of fact and the application of expert knowledge for the ascertainment of the technical meaning of the words and a correct

---

[4] Compare *Hohenberg* v. *Louisville & Nashville R. Co.*, 46 F. (2d) 952, 955; *Wheelock* v. *Walsh Fire Clay Products Co.*, 60 F. (2d) 415, 418; *Hygrade Food Products Corp.* v. *Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 85 F. (2d) 113, 116.

appreciation of a variety of incidents affecting their use."
Here, the shippers might have brought their action at law
without resort to the Commission.

*Third*. The shippers urge that the carriers are estopped
from contesting the interpretation given by the Commis-
sion to the Combination Rule, because in Cancellation
Rule for Constructing Combination Rates on Lumber,
81 I. C. C. 745, decided by Division 3 in August, 1923, and
affirmed on reargument before the full Commission De-
cember 2, 1924, in 93 I. C. C. 614, the carriers vainly
sought to have the rule modified so as to overcome the
construction given by the Commission. The denial of
their application left them remediless by administrative
action; but that action in no way prejudiced their right
to insist in the courts upon the construction of the rule
for which they had contended.

*Fourth*. The shippers urge that the interpretation given
by the Commission should be followed by the Court, be-
cause it embodies the settled administrative construction
acquiesced in by carriers and shippers. It is true that the
Commission has repeatedly declared its adherence to the
construction for which the shippers contend. Many car-
riers acquiesced in that construction, in part possibly, be-
cause they preferred to take the lesser amount rather
than risk losing the traffic. But the cases cited show that
other carriers protested vigorously; and their protests
have been persistent.[5]

---

[5] Compare Cancellation Rule for Constructing Combination Rates
on Lumber, 81 I. C. C. 745; 93 I. C. C. 614; McGowin-Foshee Lum-
ber Co. *v.* A., F. & G. Ry. Co., 95 I. C. C. 451; Moore-Marshall
Lumber Co. *v.* New Orleans & Northeastern R. Co., 112 I. C. C. 33;
M. H. Gunther & Co. *v.* Louisville & Nashville R. Co., 112 I. C. C.
387; Milne Lumber Co. *v.* New York Central R. Co., 152 I. C. C.
65; Held *v.* Cleveland, C., C. & St. L. Ry. Co., 161 I. C. C. 413;
Edward Eiler Lumber Co. *v.* Missouri Pacific R. Co., 161 I. C. C.
415; Domestic Hardwoods, Inc. *v.* Baltimore & Ohio R. Co., 168
I. C. C. 753; Brabston *v.* Louisville & Nashville R. Co., 176 I. C. C.
421.

*Fifth.* The shippers urge, in support of the Commission's construction, that if application of the Combination Rule is denied, many existing routes, although remaining legally open, will be commercially closed, (compare *Virginian Ry. Co.* v. *United States,* 272 U. S. 658, 661), because the combination rates, if not reduced by the Combination Rule would be prohibitively high. Such considerations have no place here, where the sole question for decision is whether there exists a joint through rate over some route between the point of origin and destination. If the route to which alone the joint through rate applies is deemed inadequate, there is ample power in the Commission to establish by proceedings under Paragraph 3 of § 15 of the Act other through routes with joint rates.[6] Likewise, if the rates on the combination routes are deemed excessive, or discriminatory, there is ample power in the Commission, under other provisions of the Act, to reduce the rates.

*Affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.

---

[6] The rule had little application until 1920 when large rate increases were authorized by Ex parte 74, 58 I. C. C. 220.