**FORT WORTH & DENVER CITY RY. CO. v. CHILDRESS COTTON OIL CO.**

Civ. A. No. 220.

District Court, N. D. Texas, Amarillo Division.

Oct. 22, 1942.

938

Charles J. Kelly, of Denver, Colo., and Morgan, Culton, Morgan & Britain, of Amarillo, Tex., for plaintiff.

Leffingwell, Currie & Davis, of Dallas, Tex., and W. W. Gibson, of Amarillo, Tex., for defendant.

WILSON, District Judge.

Defendant ordered of plaintiff a car 40 feet in length, in which to ship cotton linters interstate. Plaintiff, not being able to comply, furnished a car 50 feet in length. The jury found that defendant shipped more linters in it than it could have in a 40 foot car, but the undisputed evidence shows some less than the full capacity of the 50 foot car was used. Plaintiff charged, and the defendant paid freight, on the basis of the minimum weight of the car ordered. This is an undercharge suit, with the import that the true basis was the minimum weight of the car furnished. In money, less than $100 is involved.

It is agreed that the applicable tariff governing the freight to be charged is Section 3A of Consolidated Freight Classification No. 13, known as Rule 34. The material parts of it, are as follows: "If carrier has been unable or finds that it will be unable within six days after receipt of order * * * to furnish closed car of the length ordered and furnishes longer

car, minimum weight shall be that fixed for car ordered except that when *loading capacity* of car is used, minimum weight shall be that fixed for car furnished." (Emphasis mine).

"Loading capacity" are the words to be construed. Does it mean full or partially full? From the above facts and a mere reading of the tariff, the question would seem to be too simple for construction, certainly for such a serious controversy, since it is agreed more linters could have been carried in the 50 foot car. The natural effect of the evidence and that agreement would seem to be that the "loading capacity" of the car furnished was not used. And the tariff provides, only when it is used shall its minimum weight be used. Suppose the 50 foot car had been loaded to its recognized weight, or space, capacity to where it would not take another bale, would it not then be the right construction to say its "loading capacity" had been used? If it had been loaded short of full, would it not then be just as appropiate to say that its "loading capacity" had not been used?

▇ Despite these deductions, which appear to be self-evident, plaintiff's counsel, probably not of his own choice, though he concedes the decision here turns on the construction of the phrase, "loading capacity", "contends that these words as used in this tariff mean that the defendant could not load any more bales of cotton linters into the car furnished and used than could have been loaded into the car ordered, if defendant is to receive the benefit of the freight rates that apply to a car 40 feet in length." The tariff does not say that. Such a construction ignores the capacity of the 50 foot car. That is not the natural and ordinary construction that men in the freight business would apply to those words of the tariff. Obviously the position is taken because such a construction would make the operation of the tariff more in keeping with the intent and purposes of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., to prevent rebates, discriminations, preferential rates, etc. That such reasoning and theory is relied upon, not construction, is confirmed by the following quotations from plaintiff's brief: "In construing the words 'loading capacity' the Court must give them a reasonable and rational construction and relate them to the subject matter at hand. The subject matter at hand is whether or not the Interstate Commerce Act has been violated. The purpose of the Interstate Commerce Act is to bring about uniformity. Consequently, this tariff and the words 'loading capacity' should be construed with this purpose in mind. * * * On the other hand, it is not reasonable to contend that the shipper should be permitted to load more into the car furnished at the same rates that apply to the size of car ordered. If such construction is given to the words 'loading capacity' the purpose of the Interstate Commerce Act is defeated and it is in the power of the carrier at its convenience and discretion to give a shipper preferential treatment. It is the duty of the Court to avoid a construction having that effect."

To sustain that view, the following authorities are cited: Reynolds v. General Electric Company, 8 Cir., 141 F. 551, 554; Campbell v. Cornish, 163 Okl. 213, 22 P.2d 63, 67; E. R. Darlington Lumber Co. v. Missouri Pac. Ry. Co., 216 Mo. 658, 116 S.W. 530, 533; Smokeless Fuel Co. v. Chesapeake & O. Ry. Co., 142 Va. 355, 128 S.E. 624, 629; Hohenberg v. Louisville & N. R. Co., 5 Cir., 46 F.2d. 952, 955.

▇▇ It is the tariff we are called upon to directly construe and not the Interstate Commerce Act. Of course it should not be violative of the Act. Those authorities are to the effect that it is the duty of the court in construing such tariff to consider the end in view, the object to be attained by its framers. If it can so be construed, consistently with the words used, of course that should be done, but the decisions also hold that the rules with respect to construing tariffs are not different from other documents and that the language, if plain and unambiguous, must control. Such reasoning of plaintiff's counsel, as to the policy that should be pursued in construing tariffs to make them consistent with their purpose and that of the Interstate Commerce Act, may be all well and good. But here, it is what the tariff was, not what it should have been, that controls us.

I would hold with plaintiff, if I could do so consistently with the words used in Rule 34. I see no good reason why defendant should have been allowed to ship more bales of linters in the 50 foot car than it would have, or could have, shipped in the 40 foot car it ordered, without being required to pay some more freight. The purpose of the Interstate Commerce Act is for the shipper to pay freight on what he ships. There is a difference of 10 feet

in the lengths of the cars here involved, quite a space. Under Rule 34, as I read it, the defendant could load that excess space, and if it stopped a bale short of the recognized loading capacity of the 50 foot car, the minimum weight of the 40 foot car ordered would apply. It can be seen, from a practical viewpoint, that the carriers were not without some reason for fixing the tariff as they did. They seem to have thought it was fair to shippers, all alike, under the difficulties of such incidents, not to apply the higher minimum car weight unless the "loading capacity" of the bigger car furnished, but not ordered, was used. In so providing, they meant the limit of the fixed loading capacity of such car. The difficulties, and possible hardships to the shipper, in fixing an equitable rate for the·excess might have entered into it.

■ Of course, in a sense, when you load anything in a car you use its loading capacity. Here if the defendant, after having to accept the bigger car, had actually loaded less into it than he could have loaded into a 40 foot car, in a sense, the loading capacity of the 50 foot car would have been used. To give the words "loading capacity", as used in Rule 34, such a construction as that would be absurd. Plaintiff does not contend for that. But it does stand upon a construction very much akin to it, in this. It says the loading capacity of the larger car furnished is used when a load is placed in it, anywhere beyond the loading capacity of the 40 foot car, up to and including the full loading capacity of the 50 foot car; in other words, a loading anywhere in that area brings on the shipper the full minimum weight of the bigger car. My view is, it does not apply, except when it is loaded to its capacity.

■ Lastly, plaintiff insists that the Interstate Commerce Commission adopted the construction of Rule 34 that it contends for here; that such is the effect of its Rule 66(a) of Tariff Circular 20, and that such construction is binding upon this court. Assume the Commission did, if its Rule 66 was a mere construction of Rule 34, I do not think it would be binding upon the courts. Great Northern Railway Co. v. Merchants Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943; W. P. Brown & Sons Lumber Co. v. Louisville & Nashville Railroad Co., 299 U.S. 393, 57 S.Ct. 265, 81 L.Ed. 301; Hohenberg v. Louisville & Nashville Railroad Co., 5 Cir., 46 F.2d 952, 955, certiorari denied 284 U.S. 617, 52 S.Ct. 6, 76 L.Ed. 527. In this last case, the court said: "The matter of construing such a printed railroad tariff does not differ in character from the construction of any other document which is in dispute. It presents a question of law, and as it concerns an interstate tariff it is one of Federal law. In this respect the court is not bound by the construction placed upon the tariffs by the Commission."

Of course, and very naturally, the construction of a tariff by the Commission should have great weight with the courts. Atchison, T. & S. F. v. Union Wire Rope Corporation, D.C., 1 F. Supp. 399, 400; Atchison, T. & S. F. Ry. Co. v. United States ex rel. Sonken-Galamba Corporation, 8 Cir., 98 F.2d 457; United States v. Interstate Commerce Commission, 64 App. D.C. 43, 73 F.2d 948; Great Northern Ry. Co. v. Delmar Co., 8 Cir., 43 F.2d 780.

■ Furthermore, plaintiff insists that said Rule 66, duly promulgated by the Commission, had the force of law. Fullerton Lumber Co. v. Chicago, M., S. P. & P. R. Co., 8 Cir., 36 F.2d 180; Western Union Telegraph Co. v. Guitar, 116 Tex. 497, 295 S.W. 598; Wintersteen v. National Cooperage & Woodenware Co., 361 Ill. 95, 197 N.E. 578, 582. The latter case pretty well announces the rule: "The commission is an administrative and executive body and within its statutory realm it is a legislative body, and its rules and regulations duly adopted by it have the force of law."

It will be seen, in this branch of the case, that reaching a decision resolves itself into a rather simple matter of determining, whether the Commission's Rule 66(a) of Tariff Circular 20 construed Rule 34, or has the effect of a statutory enactment.

Plaintiff relies upon the following paragraphs of said Rule, which are the only material ones I think:

"Minimum Carloads.—(a) Carriers provide cars of varying dimensions and capacities, and they provide minimum weights for the several kinds of cars based upon those dimensions and capacities. At times when transportation facilities are inadequate to supply the demand upon them it frequently is difficult or impossible for the carrier to furnish a shipper with a car of the dimensions or capacity desired by him, although the carrier has in its tariffs provisions for the use of such car. Manifestly it is not equitable or proper to require

the would-be shipper to pay additional transportation charges for the privilege of using a car of different dimensions or capacity from that which would suit his shipment or forego entirely his desire to ship.

"Some carriers provide elastic rules which properly permit the use of cars of different dimensions or capacities when they are furnished by the carrier in lieu of those ordered by the shipper, while other carriers do not so provide, and as a result instances arise in which the initial carrier under such provision furnishes the shipper with car at its convenience, and connecting carriers that have not adopted similar provisions assess higher charges in accordance with their tariffs, thus imposing upon the shipper a wholly unexpected and, in view of the commission, unreasonable charge.

*"The commission believes* that when tariffs provide minimum weights which vary with the size or capacity of the car, *it is the duty of the carrier to incorporate in such tariffs a rule* to the effect that when a car of the dimensions or capacity ordered by the shipper can not be promptly furnished, and when the carrier for its own convenience does provide a car of greater dimensions or capacity than that ordered, such car may be used on the basis of the minimum carload fixed in the tariffs for cars of the dimensions or capacity ordered by the shipper, *provided the shipment could have been loaded into or upon car of the capacity or size ordered;"* (Emphasis mine).

▆ I think a mere reading of those paragraphs discloses that the Commission was not construing Rule 34. It appears definitely to have had in mind Rule 34, and that it should be changed. It carries no other implication to me than that it was differing from the carriers as to what Rule 34 should be, in those provisions involved here. Nor do I think that the Rule, as embodied in these quoted paragraphs, had the effect of statutory law.

The first part of the first paragraph constitutes merely a recital of historical facts. The latter part expresses the Commission's view that, under certain named circumstances, it would be inequitable for shippers to be required to pay additional transportation charges where they were compelled to take cars of different dimensions or capacity from cars ordered and which would better suit their shipments. Obviously

Rule 34 is not construed, nor do the views expressed in that paragraph have the force of law.

The second paragraph is of like nature and effect. It constitutes in its entirety a recital of historical facts, closing with the opinion that the practices of some intermediate carriers imposes an unreasonable freight charge on shippers in circumstances similar to those we have here. It makes no gesture toward construing Rule 34, nor could it constitute law as worded.

If there is anything in the Rule 66 which sustains the positions taken by plaintiff, it must be found in the last paragraph. After summarizing the facts with respect to the way carriers deal with shippers, who are not able to get the size cars suitable for their particular shipments, the Commission in the last paragraph was merely giving its own viewpoint, however widely it might differ from present tariffs, and practices of carriers, as to how and when higher minimum car rates should be imposed upon a shipper, where compelled to take a car not of the dimensions it ordered. For instance it says, "it is the duty of the carrier to incorporate in such tariffs a rule" to this effect: That when the carrier is not able to furnish to the shipper a car of the capacity ordered, and, for its own convenience, provides a car of greater capacity, the shipper may use such car on the basis of the minimum carload fixed in the tariff for the car ordered, provided the actual shipment could have been loaded into the car that was ordered. Rule 66 says: "Provided the shipment could have been loaded into or upon car of the capacity or size ordered." That was merely expressing the Commission's dissent from that part of tariff, which provides that the minimum weight of the bigger car furnished shall not be applied except when its "loading capacity" is used. To be more exact, it was the Commission expressing its belief to the carrier, in circumstances like these, it should incorporate in such tariffs, that the minimum rate of the car furnished should be applied at that point where the shipper in loading it exceeds the capacity of the car ordered. The enactment of Rule 66, worded as it is, by Congress would hardly have the force of law. It forbids nothing, requires nothing and establishes nothing. It is advisory only. For my part, as stated heretofore, I think the Commission was right about it, if we would have the tariffs strictly respect the purposes of the

Interstate Commerce Act. But the trouble is, Rule 34 had not been changed, as advised by the Commission, but was in effect at the time of this shipment.

■ For the reasons stated I hold with defendant, that it is not due to pay any additional freight.