## BURRUS MILL & ELEVATOR CO. OF OKLAHOMA v. CHICAGO, R. I. & P. R. CO. et al.

### No. 2499.

Circuit Court of Appeals, Tenth Circuit.

Nov. 2, 1942.

Duke ·Duvall, of Oklahoma City, Okl., and H. D. Driscoll, of Washington, D. C., for appellant.

A. B. Enoch, of Chicago, Ill. (W. R. Bleakmore, of Oklahoma City, Okl., on the brief), for appellees.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Burrus Mill & Elevator Company of Oklahoma owns and operates a flour mill at Kingfisher, Oklahoma; and the Chicago, Rock Island & Pacific Railroad Company owns and operates a line of railroad, among others, from Saint Louis, Missouri, to Memphis, Tennessee, by way of Kansas City, Missouri, Enid, Kingfisher, and Oklahoma City, Oklahoma, and Little Rock, Arkansas. In July and August, 1935, the milling company purchased a large quantity of wheat in Saint Louis and caused it to be shipped via the Rock Island, 12 carloads to Kingfisher and 94 carloads to Enid. The wheat consigned to Enid was unloaded

there and later shipped over the Rock Island to Kingfisher. The milling company milled all of such wheat into flour at its mill in Kingfisher; and from there it shipped 211 carloads of flour over the Rock Island to Memphis, for delivery there to other carriers for transportation to points of destination beyond. All of the wheat had been grown at places beyond Saint Louis; had been shipped over lines of other carriers from such places of origin into Saint Louis; had been unloaded there for storage; and was loaded anew when shipped from Saint Louis to Enid and Kingfisher. Neither the milling company, nor the Rock Island had anything to do with the shipments inbound to Saint Louis. The shipments of wheat outbound from Saint Louis to Enid, outbound from Saint Louis to Kingfisher, and outbound from Enid to Kingfisher, and the shipments of flour outbound from Kingfisher to Memphis and beyond, were supported by inbound paid freight bills showing the transportation of an equivalent tonnage of wheat but without preservation of identity. Saint Louis and Kansas City were each a proportional rate point. The proportional rate from Saint Louis to Kansas City was fourteen cents per hundred, and that from Kansas City to Memphis was twenty cents per hundred. The Rock Island charged thirty-four cents, the combination of these two proportional rates, as a component factor of the through rate applicable from the points of origin beyond Saint Louis to the points of destination beyond Memphis. Asserting that a rate of eleven cents applied, the milling company sought to recover the difference. The railroad company prevailed and the milling company appealed.

In 1926, the Interstate Commerce Commission initiated a comprehensive inquiry into conditions respecting rates and practices affecting grain and grain products in the Western District, and orders were subsequently made prescribing maximum rates for the shipment of grain and grain products. Rate Structure Investigation, 164 I.C.C. 619; Id., 173 I.C.C. 511; Id., 205 I.C.C. 301. As the result of the first order, the Rock Island filed with the Commission a new tariff effective July 1, 1935, covering the shipment of grain, grain products and related commodities between stations in Missouri, Kansas, and certain other states, and Memphis. Under it, the proportional rate on carload shipments of wheat and flour from Saint Louis to Memphis through Kansas City, Enid, and Kingfisher was

eleven cents per hundred pounds. That particular rate had not been published in any previous tariff, and it was canceled about sixty days later. But it was in force at the times material here. Conforming to a general practice of long standing, the tariff further provided for so-called transit privileges of two stops without additional charge for storage, milling or processing. And it also contained Item 20, which reads: "Shipments passing through or stopped at points from which proportional rates are published shall be charged the combination of rates to and from each proportional rate point on the route of movement. (See Exception, Item No. 12). Exception. Where the lowest combination of rates via a route to and from one proportional rate point has been published for application over another route which passes through one or more proportional rate points, transit may be given at intermediate points on the latter route on basis of the lowest rate applicable. The transit point shall be intermediate on the route first described."

The construction of tariffs does not substantially differ in character from that of any other document drawn in controversy. Great Northern Railway v. Merchants' Elevator Co., 259 U.S. 285, 42 S. Ct. 477, 66 L.Ed. 943; Brown & Sons Lumber Co. v. Louisville & Nashville Railroad Co., 299 U.S. 393, 57 S.Ct. 265, 81 L.Ed. 301. And one cardinal rule of construction is that all pertinent parts and provisions shall be taken into consideration and each given effect if that can reasonably be done. If this wheat had moved from Saint Louis to Memphis as wheat, the eleven-cent rate would have applied. But it did not do that. It passed through Kansas City, a proportional rate point, was unloaded at Kingfisher for processing, and then moved as flour. In other words, between Saint Louis and Memphis it passed through one point having proportional rates and was accorded transit privileges at another point. Taking into consideration the several provisions of the tariff to which reference has been made, it seems clear that Item 20 applied and that therefore the combination of the two proportional rates was properly charged as a component factor of the through rate applicable from the points of origin beyond Saint Louis to the points of destination beyond Memphis.

It is urged however that Item 20 had no application because it means that.

the combination of proportional rates shall be charged only where a shipment is granted transit privileges at a point having proportional rates. The precise argument is that the words "passing through" as used in the provision means passing through an elevator for processing. The provision deals primarily with places or points from which proportional rates are published and with shipments passing through or stopped at points or places of shipment, not passing through elevators. To hold that it means passing grain through an elevator as distinguished from passing through a place or point of shipment would be to torture by judicial fiat language plainly intended to have one meaning into something wholly different. That a court is not free to do.

■ As we understand, two other railroad companies having more direct routes from Saint Louis to Memphis each published and had in force a combination of rates of eleven cents; and in view of this fact, the milling company contends that if Item 20 had application then the exception contained in such provision governed, and that under it the eleven-cent rate should have been charged. The exception provides in effect that where the lowest combination of rates via a route to or from one proportional rate point has been published for application over another route which passes through one or more proportional rate points, transit privileges may be given at intermediate points on the latter described route, but that the transit point must be intermediate on the route first described. As we interpret it, the exception means that transit privileges may be accorded at an intermediate point on the higher-rated route on the basis of the lowest rate if the intermediate point is likewise a transit point intermediate on the lower-rated route. Since Kingfisher was not a transit point intermediate on either of the lower-rate or more direct routes the exception was inapposite.

■ Next comes the contention that Item 20 was located in such manner in the tariff that it should not limit or abrogate the applicability of the eleven-cent rate. The location of a rule or other similar provision in a published tariff should be taken into account and given appropriate consideration in determining the question of its correct application. This provision was not placed with data appearing on later pages headed, "Rates to Apply and Proportions to and From Transit Stations." But it was printed in the size and kind of type appearing throughout the document, was placed on page two of the document which bore the heading, "Application of Tariff," and in a left-hand column under the word "Subject" it was indexed in a predominantly perpendicular arrangement "Shipments Passing Through or Stopped at Points From Which Proportional Rates Are Published." It cannot be said that the provision was given such an unusual or unexpected place in the tariff, or was so inconspicuous, or was so misleading that it cannot affect the applicability of a shipment from Saint Louis to Memphis which passes through a point having proportional rates and is given transit privileges at another point.

■ It is further contended that the several provisions of the tariff present ambiguity; that such an ambiguity is to be resolved in favor of the shipper; and that therefore the eleven-cent rate should have been charged. Just before beginning to purchase the wheat, the milling company telegraphed the railroad company at Little Rock making inquiry as to whether its understanding was correct that a rate of eleven cents applied to shipments from Saint Louis to Memphis for delivery beyond, with transit available at Kingfisher; the railroad company replied by telegram that, with certain requirements which have no bearing here, such understanding was correct; some of the wheat was purchased the next day; and on the following day, the railroad company telegraphed the milling company correcting its former wire and saying that it then regretted to find that Item 20 required protection of the combination rate of thirty-four cents. Of course, these telegrams are not relied upon as constituting an effective contract or estoppel, however strong reliance is placed upon them as throwing light upon the question of ambiguity. Substantial ambiguities or expressions of doubtful meaning in tariffs are to be resolved in favor of the shipper. Southern Pac. Co. v. Lothrop, 9 Cir., 15 F.2d 486, certiorari denied, 273 U.S. 742, 47 S.Ct. 336, 71 L.Ed. 869; Updike Grain Co. v. Chicago & N. W. Ry. Co., 8 Cir., 35 F. 2d 486; Atlantic Coast Line R. Co. v. Atlantic Bridge Co., 5 Cir., 57 F.2d 654; Union Wire Rope Corporation v. Atchison, T. & S. F. Ry. Co., 8 Cir., 66 F.2d 965, certiorari denied, 290 U.S. 686, '54 S.Ct. 122, 78 L.Ed. 591. But when all of the pertinent provisions of the tariff are weighed and

considered together and each is given its appropriate force and effect, we fail to see any substantial ambiguity.

The judgment is affirmed.