CAPITAL COMPRESSED STEEL CO. v. CHICAGO, ROCK ISLAND AND PACIFIC R. CO.

CAPITAL COMPRESSED STEEL CO. v. ST. LOUIS–SAN FRANCISCO RY. CO.

Nos. 4058–4059.

United States Court of Appeals Tenth Circuit.

July 29, 1950.

692

Herman Merson and Duke Duvall, Oklahoma 'City, Okl. (Dudley, Duvall & Dudley, Oklahoma City, Okl., on the brief), for appellant.

Harvey L. Harmon and J. I. Gibson, Oklahoma City, Okl. (Satterfield, Franklin & Harmon and Savage, Gibson, Benefield & Hart, all of Oklahoma 'City, Okl., on the brief), 'for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

This appeal involves the construction of an application of Freight Tariff 414-A, commonly known as the Kipp Tariff, set forth in subjoined note 1.[1] The tariff cov-

Freight Tariff No. 414-A
Application
Iron or Steel Scrap

Carload rates, ratings and minimum weights applicable on iron or steel scrap will also apply on carload shipments of pieces of iron or steel (not scrap or fragments) and iron or steel articles, in their original form or partly dismantled, with or without other metals incidentally combined therewith, having no recognized commercial use or value except for the recovery of the ferrous-metal content thereof, provided

(a) Each such shipment is described in the bill of lading as follows:

"Scrap iron or steel, viz. ———— (Here insert general description of lading.)"

(b) The shipper certifies on the bill of lading:

"The material comprised in this shipment has been bought as iron or steel scrap and has no recognized commercial use or value except for the recovery of the ferrous-metal content thereof ———— (Shipper) By ————."

(c) The consignee executes and furnishes to the delivering carrier a certificate in the following form:

"The undersigned consignee hereby certifies that the property described in the following freight bill: ———— Railroad Freight Bill No. —— Date ———— Car No. and Initial —— Commodity ———— Origin ———— Destination ———— Consignor ———— Consignee ———— Has been bought by him (or us) as Iron or Steel Scrap;

ers "iron or steel articles, in their original form or partly dismantled, * * * having no recognized commercial use or value except for the recovery of the ferrous-metal content thereof."

On December 6, 1946, the War Assets Administration at New Orleans, Louisiana, issued a special offering of certain surplus government property. The Capital Compressed Steel Company[2] tendered a bid for certain heavy wire cable items in the special offering. The bid was on a basis of $22.20 per ton, which was the current price for scrap iron. The bid was accepted on January 16, 1947, upon a scrap basis. On January 15, 1947, the Steel Company wrote the War Assets Administration, instructing it to bill the material as steel scrap and to ship it in open-top gondola cars. It did not specifically request the War Assets Administration to affix to the bill of lading the certificate required by paragraph (b) of the Kipp Tariff. The wire cable had no recognized commercial use or value, except for the recovery of the ferrous-metal content thereof. The War Assets Administration described the material in the bill of lading as reels of steel wire rope. The wire cable was shipped in 14 cars. The delivering carrier of four cars was the St. Louis-San Francisco Railway Company,[3] and the delivering carrier of the remaining 10 cars was the Chicago, Rock Island and Pacific Railroad Company.[3]

Upon arrival of the shipments, the Steel Company changed the freight bills so they reflected a scrap rate; made the following certificate on the bill of lading,

"March 18, 1947.
"Affidavit

"The undersigned hereby certifies that the material shipped in car NP 27790 and covered by your freight bill No. 8205 was purchased as scrap and will be prepared and sold as scrap for remelting purposes only"; and paid freight on the basis of the Kipp Tariff rate.

that it has no recognized commercial use or value except for the recovery of the ferrous-metal content thereof; and that it will be used or resold only for that purpose.

The carriers classified the shipment under Item 6920 of the SWL Tariff No. 173-U, which includes wire rope, and fixed the rate at 86 cents per 100 pounds. The Steel Company refused to pay on the basis of the higher tariff and the carriers brought this action to recover the balance of the freight alleged to be due.

The wire cable was large size marine cable, some of it two inches in diameter. It was in good condition. Most of it was new and was protected by a coating of galvanized material and grease. There was a little corrosion on a portion of it. There was no market for this type of marine cable for its intended use.

The representatives of the War Assets Administration did not bill the cable as scrap iron and did not attach the certificate provided for in subparagraph (b) of the Kipp Tariff, because they were uncertain that the Kipp Tariff was applicable thereto.

From a judgment in favor of the carriers, the Steel Company has appealed.

■ The wire cable would have been entitled to move under the Kipp Tariff if the requirements of subparagraphs (a), (b) and (c) thereof had been complied with. There was no compliance with subparagraphs (a) and (b) and the certificate attached to the bill of lading by the Steel Company did not certify that the wire cable had "no recognized commercial use or value except for the recovery of the ferrous-metal content thereof," except as that fact may be implied from the statement in the certificate that the wire cable "was purchased as scrap and will be prepared and sold as scrap for remelting purposes only."

We are of the opinion that there was not a substantial compliance with the requirements of the Kipp Tariff.

■ The question presented then, is whether or not a commodity, which was, in fact, iron or steel goods in their original

—— (Consignee) Dated —— By ——"

2. Hereinafter referred to as the Steel Company.

3. Hereinafter referred to as the carriers.

694

form, but having no recognized commercial use or value, except for recovery of the ferrous-metal content thereof was entitled to move under the Kipp Tariff, notwithstanding a non-compliance with subparagraphs (a) and (b) and a failure to comply fully with subparagraph (c). In other words, if the commodity fell within the purview of the Kipp Tariff, was non-compliance with subparagraphs (a), (b) and (c) immaterial?

In Burrus Mill & Elevator Co. of Oklahoma v. Chicago, R. I. & P. R. Co., 10 Cir., 131 F.2d 532, 534, we said: "The construction of tariffs does not substantially differ in character from that of any other document drawn in controversy. Great Northern Railway Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943; W. P. Brown & Sons Lumber Co. v. Louisville & Nashville Railroad Co., 299 U.S. 393, 57 S.Ct. 265, 81 L.Ed. 301. And one cardinal rule of construction is that all pertinent parts and provisions shall be taken into consideration and each given effect if that can reasonably be done."

Of course, the requirements of subparagraphs (a), (b) and (c) were to prevent commodities moving under the Kipp Tariff, which did not come within the purview thereof, but we cannot regard the requirements of subparagraphs (a), (b) and (c) as immaterial, merely because the commodities could have been truthfully described in the bill of lading as scrap iron or steel, and the certificates prescribed by subparagraphs (a), (b) and (c) could have been truthfully made.

█ The further alternative contention of the Steel Company that the wire cable was entitled to move under SWL Tariff No. 173-U, Item 6920, may be briefly disposed of. The wire cable was not scrap in the ordinary acceptation of that term, and the trial court so found. Note 2 of that Tariff reads:

"Ratings on Scrap Iron or Scrap Steel apply only on pieces (separate or combined) of iron or steel having value for re-melting or precipitation purposes only."

The wire rope was in its original form and was not in pieces, that is, it was not in fragments, or parts separated from the whole.[4]

The judgment is affirmed.

4. See Atchison, T. & S. F. Ry. Co. v. United States ex rel. Sonken-Galamba Corporation, 8 Cir., 98 F.2d 457, 458; Sonken-Galamba Corporation v. Union Pac. Ry. Co., 10 Cir., 145 F.2d 808, 809.