CORNELI SEED COMPANY, a corporation, Appellant,

v.

UNION PACIFIC RAILROAD COMPANY, a corporation, Appellee.

No. 16108.

United States Court of Appeals Ninth Circuit.

Dec. 29, 1958.

---

Greensfelder, Hemker & Wiese, Forrest M. Hemker, St. Louis, Mo., for appellant.

Bryan P. Leverich, Salt Lake City, Utah, L. H. Anderson, E. C. Phoenix, D. A. Bybee, Pocatello, Idaho, for appellee.

Before ORR, CHAMBERS and HAMLIN, Circuit Judges.

ORR, Circuit Judge.

Appellant is in the business of processing and wholesaling seeds. It purchases from growers in the Pacific Coast States and Idaho, and then ships via appellee and its connecting carriers to Twin Falls, Idaho where the seeds are stopped in transit for processing before being reshipped to points in the east and mid-west. The tariff rate approved by the Interstate Commerce Commission on such shipments is less than the combination of local rates from the point of origin to Twin Falls and thence from Twin Falls to the point of destination. The tariff conditions for such a transit rate are that said shipments be in fact through shipments; that unexpired in-

bound freight bills of lading which had been recorded when the shipments arrived in Twin Falls, or tonnage credit slips must be surrendered and cancelled and that the outbound bills of lading or shipping orders must have inserted thereon the weight, point of origin and date of each inbound shipment covering the commodities forwarded.

Appellant complied with the tariff, as set out, for a number of years, but on or about February of 1949 it learned that its customers were discovering its sources of supply from the bills of lading and then dealing directly with the growers, thus eliminating appellant as middleman. To avoid this discovery appellant ceased using the transit bill of lading which allowed for the transit rate, and substituted a regular form of bill of lading and paid the local rates to and from Twin Falls. Then in order to get the benefit of the transit rate appellant would file with appellee claims for refund for overcharge containing the necessary information called for by the through tariff. Eventually appellee became fearful that it was not complying with the tariff requirements and therefore was engaging in an unlawful practice. It then not only refused to further engage in the refund procedure, but demanded return of the refunds theretofore made for nine shipments in 1953 and threatened to institute suit for recovery of the amount.

Appellant then notified appellee that it intended to institute proceedings before the I.C.C. to determine the applicability, reasonableness and lawfulness of the charges, and did file such a petition on October 1, 1954.

On January 19, 1955 the appellee instituted the instant action in the United States District Court for the District of Idaho. The district court pursuant to stipulation of the parties stayed this action until twenty days after the decision of the I.C.C.

In due course, the I.C.C. rendered a decision holding that the assailed rates and charges were not shown to be unjust, inapplicable, or unreasonable. Said decision remains in force and effect, no petition for review having been filed.

The parties are in agreement that the tariff approved by the I.C.C. must be complied with in order for transit rates to be available because to do otherwise would be an illegal discrimination. We are required to accept the ruling of the I.C.C. that the applicable tariff is reasonable because the subject matter is within the primary jurisdiction of the I.C.C.[1] Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 1907, 204 U.S. 426, 27 S.Ct. 350, 51 L. Ed. 553; cf. Great Northern R. Co. v. Merchants' Elevator Co., 1922, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943.

The question for determination here is: Were the transactions relative to the trans-shipment of seed such a compliance with the fixed tariff as to come within its terms? It is apparent there was no literal compliance because certain required information was not given on the shipping instructions on the bill of lading. But be that as it may argues appellant, there was a substantial compliance which is all that is necessary, and the procedure followed meets the test of substantiality as a matter of law, consequently the finding of the I.C.C. with respect to compliance has no binding effect because questions of law are not subjects of primary jurisdiction citing Great Northern R. Co. v. Merchants' Elevator Co., supra.

---

1. The doctrine of primary jurisdiction is one concerned with the allocation of issues between the jurisdiction of the I.C.C. and the courts. It applies where a claim is equally cognizable in the I.C.C. and the courts under the jurisdictional statutes, and is brought into play to assure that it is the I.C.C. that decides the issue when it is one that "under a regulatory scheme" requires the special competence of the agency or a uniform result on certain administrative or factual questions. United States v. Western Pacific R. Co., 1956, 352 U.S. 59, 77 S. Ct. 161, 1 L.Ed.2d 126.

■ Not all questions of law are outside of the scope of the primary jurisdiction of the agency—particularly those requiring the assertion of the expert and specialized knowledge of the agency members or questions involving the interpretation of terms used in a peculiar or technical sense. United States v. Western Pacific R. Co., 1956, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126.

■ The question presented for our determination involves neither of the factors of expertise or language used in a peculiar or technical sense. We therefore have jurisdiction to determine the question. See Civil Aeronautics Board v. Modern Air Transport, 2 Cir., 1950, 179 F.2d 622; see also W. P. Brown & Sons Lumber Co. v. Louisville & Nashville R. Co., 1937, 299 U.S. 393, 57 S.Ct. 265, 81 L.Ed. 301. In doing so we consider the finding of the I.C.C. persuasive and are in agreement that there was not a compliance with the transit tariff.

■ The words of the tariff specifically required the listing of the point of origin in the original documents—the shipping orders or the outbound bill of lading. Anything short of that was not the required compliance. Appellant may have suffered loss of customers by complying with the tariff requirements, but such a situation does not permit the carrier to allow a single shipper to gain the benefits of the tariff by entering into a modification agreement. 49 U.S.C.A. § 6(3, 7).

We think the I.C.C. aptly points up the situation in its decision wherein it is said:

"Transit arrangements historically have been a source of discrimination. Uniform rules and regulations in effective tariffs are a necessary step in affording equal opportunities to all shippers operating under like circumstance. Constant policing by the carriers is necessary to prevent abuses of the privileges. The rules and regulations assailed have been in effect over a long period of time at many transit points. It may be assumed that they have played an essential part in the maintenance of equality of charges for competing transit operators."

The judgment is affirmed.