The **SOCIETY OF the NEW YORK HOSPITAL, Plaintiff,**

v.

**ASSOCIATED HOSPITAL SERVICE OF NEW YORK et al., Defendants.**

**No. 73 Civ. 2437 (CHT).**

United States District Court,
S. D. New York.

Oct. 4, 1973.

White & Case, New York City, for plaintiff; Jeffrey A. Barist, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for A.H.S.; Robert A. Bicks, New York City, Thaddeus Holt, Washington, D.C., of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of N. Y., New York City, for the State; Michael Colodner, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Defendants have moved for a stay of this action pending administrative resolution of certain issues arising under the Economic Stabilization Act of 1970, as amended, 12 U.S.C.A. § 1904 Note (1973) ("the Act") and regulations promulgated thereunder pertaining to institutional providers of health services, 6 C.F.R. § 300.18 (1973). Plaintiff, The Society of the New York Hospital, has moved for an order of summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ. P."). For the reasons cited *infra*, both motions are denied.

### Facts [1]

Subject matter jurisdiction of this action is based upon sections 210 and 211 of the Economic Stabilization Act of 1970,[2] as amended, 12 U.S.C.A. § 1904 Note (1973); 28 U.S.C. § 1331 (1970) (matter in controversy exceeds the sum of $10,000 and arises under the laws of the United States); 28 U.S.C. §§ 2201, 2202 (1970) (Declaratory Judgment Act); 42 U.S.C. § 1983 (1970); and principles of pendent jurisdiction.

Plaintiff is a New York voluntary teaching hospital which, among other things, provides health care treatment to Blue Cross and Medicaid patients for which it is reimbursed. Defendant Associated Hospital Service of New York ("AHS"), more commonly known as Blue Cross, prospectively reimburses plaintiff and other hospitals for inpatient, premature nursery and emergency room care treatment rendered to AHS subscribers. The rate of reimbursement is regulated, in the first instance, by New York law. AHS first computes the reimbursement rates and then submits the proposed rates to the New York State Commissioner of Health as required by the Commissioner's regulations under Part 86 of the New York Administrative Rules and Regulations, 10 N.Y.C.R.R. § 86.2. N.Y. Public Health Law § 2807 (McKinney 1972) requires the Commissioner of Health, defendant Hollis S. Ingraham ("Ingraham"), to certify that the reimbursement rates are reasonably related to the costs of efficient production of hospital service. Thereafter, the Superintendent of Insurance, defendant Benjamin Schenck ("Schenck"), must approve the reasonableness of the rates. N.Y. Insurance Law § 254(2) (McKinney 1972). Approval of prospective Medicaid[3] reimbursement rates follows a similar procedure. First, Ingraham must certify that the rates are reasonably related to the efficient production of hospital serv-

---

1. The complaint states four claims for relief which will be treated together for reasons of convenience.

2. Section 210 of the Act provides in pertinent part:
   "(a) Any person suffering legal wrong because of any act or practice arising out of this title . . . may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction . . . , and/or damages."

Section 211 of the Act provides in pertinent part:
   "(a) The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy . . . .."

3. Medicaid is a medical assistance program for the indigent, established under Title 11 of the N.Y. Social Welfare Law § 363 et seq. (McKinney 1972), enacted pursuant to the Health Insurance for the Aged Act, 42 U.S.C. § 1395 et seq. (1970).

ices and then the New York State Director of the Budget, defendant Richard L. Dunham ("Dunham"), must approve the reasonableness of the rates. N.Y. Public Health Law § 2807 (McKinney 1972).

The present controversy stems from the institution of economic controls by the federal government in 1971. On August 15, 1971, President Nixon announced a 90-day freeze upon wages, salaries, rents and prices. Executive Order Nos. 11615 and 11627. On November 14, 1971, Phase II went into effect and the agencies charged with its enforcement promulgated a series of regulations, including regulations pertaining to institutional providers of health care ("ESP regulations"). 6 C.F.R. § 300.18 (1973). When, on January 11, 1973, Phase III was announced, the Cost of Living Council ("CLC") issued new regulations providing that the regulations pertaining to institutional providers of health care were to remain in effect. 38 F.R. 1487 (Jan. 12, 1973).

Because this suit involves the setting of health care reimbursement rates for the years 1972 and 1973, the ESP regulations appearing at 6 C.F.R. § 300.18 are applicable. Without explaining these regulations in detail, it is sufficient to note that the regulations set forth the circumstances under which a hospital may increase prices. If, under the ESP regulations, a proposed price increase, which is "cost justified", will lead to an increase in aggregate annual revenues of 2.5% but not more than 6% over the base period, no administrative action is required. All the hospital need do is submit to the District Director of the Internal Revenue Service ("I.R.S.") a Form S–52 which reports the proposed price adjustments. If, however, the proposed price increase will lead to an increase in aggregate annual revenues at an annualized rate of more than 6%, then the hospital must receive an administrative "exception". 6 C.F.R. § 300.-18(b), (c).

Plaintiff alleges that for the years 1972 and 1973, during which the ESP regulations discussed *supra* were in effect, the defendants calculated, certified and approved two separate sets of reimbursement rates for both AHS and Medicaid payments. The first set of rates, which included price increases ("Public Health Law rates"), were computed under the N.Y. Public Health Law and regulations issued thereunder. Plaintiff also alleges that the defendants separately computed *what they regarded as* the maximum rates payable under the Act and ESP regulations ("the ESP Maximum rates") and that it is the second sets of rates which have been used for purposes of reimbursement. It is alleged, and defendants admit, that the ESP Maximum rates are not based upon a strict interpretation of the ESP regulations.

Plaintiff claims that it is entitled under the Act and ESP regulations to receive AHS and Medicaid reimbursements at rates at least as high as those under the N.Y. Public Health Law, as shown by its S–52 Forms for 1972 and 1973;[4] that the ESP Maximum rates calculated by defendants[5] are an incorrect application of the Act and ESP regulations; and that defendants' actions in calculating the ESP Maximum rates violate the Act, federal Medicaid legislation, the supremacy clause, and the due process clause of the fourteenth amend-

4. Plaintiff's 1972 S–52 Form shows that plaintiff would realize an annualized aggregate revenue increase of only 1.24%, even assuming that it were to receive reimbursements from defendants pursuant to the Public Health Law rates. Plaintiff's 1973 S–52 Form indicates that it would realize an increase of only 2.65%, even assuming that it were to receive reimbursements at the Public Health Law rates calculated by defendants.

5. It appears that, in order to determine the 1972 ESP Maximum rates, AHS increased plaintiff's 1971 AHS reimbursement rates by 9.22% and the Commissioner of Health increased plaintiff's 1971 Medicaid reimbursement rates by 2.5%. In 1973, AHS computed the AHS–ESP Maximum rates by multiplying the 1972 rates by 106% and the Commissioner of Health limited the 1973 Medicaid-ESP Maximum rates to an increase of less than 6% above the 1972 Medicaid rates.

ment. Plaintiff seeks a judgment (1) declaring incorrect and unlawful defendants' use of the ESP Maximum rates; (2) declaring that plaintiff is entitled to reimbursements at rates at least as high as those calculated under the N.Y. Public Health Law; (3) ordering defendants to pay any sums owed to plaintiff under the Public Health Law rates; and (4) enjoining defendants from violating the Act and the ESP regulations.

### Motion to Stay

Shortly after plaintiff commenced this action, defendants submitted two separate but similar "petitions" to the Cost of Living Council requesting that the CLC assume jurisdiction of this and related [6] matters and hold a hearing to determine whether defendants' "anti-inflation efforts" in imposing the ESP Maximum rates violated the Act. Their request for a hearing was made pursuant to section 207 of the Act. Thereupon, and before the CLC had granted their requests, defendants moved in this Court for an order to stay proceedings on the grounds that the CLC was "considering" the issues raised in this action and that the CLC, because of its expertise and "primary responsibility" in the area of price controls, should be permitted to consider the matter first. In a letter to AHS dated August 23, 1973, the General Counsel of the CLC indicated that: "The Council does not feel it appropriate in this case to conduct a hearing and declines at this time to exercise its discretionary powers to conduct a hearing as to the matters raised by the AHS petition." AHS requested clarification of CLC's decision and, in response, received a letter dated September 28, 1973 stating that the CLC agreed to consider AHS' petition as a request for interpretation of its regulations.

As plaintiff has argued, the legal basis for defendants' motion is unclear. However, because defendants rely upon cases which involve the doctrines of (1) exhaustion of remedies and (2) primary jurisdiction, the Court will discuss the applicability of the two doctrines to this case.

■■ With respect to the first of the two doctrines, it is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the *prescribed* administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938) (emphasis supplied). After examining both the Act and the ESP regulations, the Court is of the opinion that there are no prescribed administrative remedies to exhaust. Section 207(b) of the Act, upon which defendants rely, merely provides that the agencies charged with enforcement of the Act "shall . . . establish procedures which are available to any person for the purpose of seeking an interpretation, modification, or rescission of, or seeking an exception or exemption from, such rules, regulations and orders." The CLC has, pursuant to this section, created several procedures.[7] However, CLC regulations do not provide for the kind of hearing defendants have requested. That the CLC has no procedure for determining the issues in this case is supported by the Act itself. Section 210 of the Act, which permits suits for damages and other relief, and section 211(a), which vests in the district courts exclusive original jurisdiction over cases "arising under this title", indicate that disputes between private parties are to be handled by the federal district courts rather than by the agencies. Therefore, there are no

---

6. The Presbyterian Hospital in the City of New York, et al., Index No. 8418–73 (Sup. Ct., filed May 8, 1973); Benedictine Hospital, et al. v. Ingraham, et al., Index No. 9317–73 (Sup.Ct., filed May 18, 1973).

7. The CLC has created the following procedures: (1) public hearings on proposed regulations, 6 C.F.R. § 105.40(b); (2) public hearings on exceptions, exemptions or reclassifications, 6 C.F.R. § 105.37; (3) public hearings on appeals from adverse decisions of the I.R.S., 6 C.F.R. § 105.27; and (4) public hearings on challenge proceedings, 6 C.F.R. § 130.94.

administrative remedies for plaintiff to exhaust.

■ With respect to the applicability of the second doctrine, it is clear that it only comes into play in "cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion [of] agencies created by Congress for regulating the subject matter . . . . " Far East Conference v. United States, 342 U.S. 570, 574, 72 S. Ct. 492, 494, 96 L.Ed. 576 (1952). Those circumstances do not exist here. First, no administrative discretion is involved because plaintiff has not asked for an "exception". Second, although the CLC obviously has expertise in the area of price controls, this case does not involve complex questions of economic policy. Rather, the issues in this case are merely a matter of statutory interpretation and application, activities for which this Court is undoubtedly qualified. W. P. Brown & Sons Lumber Co. v. Louisville & N. R. R. Co., 299 U.S. 393, 398–399, 57 S.Ct. 265, 81 L.Ed. 301 (1937). Moreover, because the CLC has not established procedures for a determination of this kind of dispute, referral of this case to the CLC under the doctrine of primary jurisdiction is not required. Local 189, Amalgamated Meat Cutters v. Jewel Tea Co., Inc., 381 U.S. 676, 687–688, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965).

■ The fact that the CLC has agreed to consider the AHS petition as a request for an interpretation of its regulations does not deprive this Court of jurisdiction. Of course, because the CLC's interpretation of its regulations may be relevant to the issues before the Court, the CLC may be asked to submit a brief *amicus curiae* at a later date. *See, e. g.*, Catholic Medical Center v. Rockefeller, 305 F.Supp. 1256, 1267–1268 (E.D.N.Y.1969), aff'd, 430 F.2d 1297 (2d Cir.), appeal dismissed, 400 U.S. 931, 91 S.Ct. 246, 27 L.Ed.2d 262 (1970). In any event, defendants' motion for a stay is without merit and is denied.

*Motion for Summary Judgment*

■ Plaintiff has moved for summary judgment on its claims for declaratory and injunctive relief. The granting of a summary judgment motion is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well settled that under this Rule, the moving party has the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

■ Defendants argue that there are several issues of material fact which remain open. For the most part, the alleged factual issues involve the validity of figures on the S–52 Forms submitted to the I.R.S. by plaintiff for the years 1972 and 1973 and the question of whether defendants' second computation of the 1972 Medicare reimbursement rates was made in reference to ESP regulations. Although the Court will not make a ruling on the law at this juncture, it is apparent that if genuine issues of fact exist as to these matters, the Court must deny plaintiff's motion because of their materiality to its claims for relief.

First, defendants contend that some of the figures (Ingraham Aff., ¶ 11) appearing on the S–52 Form submitted to the I.R.S. are subject to question because they differ from figures used in an earlier S–52 Form, dated October 7, 1972 (which, it should be noted, was never submitted to the I.R.S.). Plaintiff concedes that it prepared the October Form, but states that it is irrelevant because it was based upon projections. Whatever the genesis of the October Form might have been, it is clear that an issue of credibility has been raised, and because it is not for this Court to decide that issue on a motion for sum-

mary judgment, resolution of that issue will have to await trial. 6 Moore's Federal Practice ¶ 56.15[4] (1972).

Second, defendants assert that the S–52 Form submitted to the I.R.S. in April 1972 may be inaccurate because of plaintiff's questionable treatment of figures regarding the "volume index", research costs and settlements. The validity of plaintiff's treatment of these figures is apparently a matter of accounting characterization and must also await trial. Mosbacher v. Basler Lebens Versicherungs G., 111 F.Supp. 551, 552 (S. D.N.Y.1951).

Third, defendants assert that summary judgment should be denied because they cannot ascertain the accuracy of the figures used in the 1973 S–52 Form. They claim that much of the information is derived from the 1972 S–52 Form, which has been challenged, and the rest of the information necessary to determine its accuracy is exclusively within the possession and control of plaintiff.[8] The fact that defendants have received some of the information upon which plaintiff's 1973 S–52 Form was based (Watson Reply Aff., Exh. 3) and the fact that they have not instituted discovery proceedings nor asked this Court for an order granting a continuance pending discovery, Fed.R.Civ.P. 56(f), suggest that defendants are merely attempting to forestall summary judgment. The opposing party cannot obtain a denial of a motion for summary judgment "on the basis of a hope that some evidence might develop at trial", particularly when, as here, he has had ample opportunity to institute discovery proceedings before the motion is decided. Schneider v. McKesson & Robbins, Inc., 254 F.2d 827, 831 (2d Cir. 1958). There is no indication that defendants will be able to offer into evidence at a later date any facts to prove the inaccuracy of the 1973 Form in its entirety. However, because some of the 1973 fig-

ures are based upon 1972 figures subject to question, as discussed *supra*, and because the Court has determined that there is some dispute over proper accounting treatment of certain figures used in the 1972 Form, any findings of fact made with respect to the 1972 Form will of course be considered with respect to the 1973 Form as well.

Fourth, defendants Ingraham, Schenck and Dunham assert that there is a material dispute as to whether defendants calculated the Medicated maximum rates for the year 1972 with the ESP regulations in mind. It is clear, however, that with respect to this issue, no material issue of fact remains. Plaintiff has submitted a Hospital Memorandum Series 72–10, dated February 28, 1972 and issued under the signature of the Assistant Commissioner of the New York State Department of Health, William F. McCann which states:

> "The attached rate schedules were developed in accordance with Part 86 of the Commissioner's Rules and Regulations, and *are designed to be compatible with the Guidelines for the Health Care Industry promulgated under the Economic Stabilization Program.*" (Watson Reply Aff., Exh. 9) (emphasis supplied).

The "attached rate schedules" give the Medicaid reimbursement rates heretofore characterized as the 1972 ESP Maximum rates. Defendants' protestations to the contrary, this document shows conclusively that the 1972 Medicaid maximum reimbursement rates were made with reference to the ESP regulations.

Finally, defendants claim that there is a material dispute as to whether plaintiff is in fact facing a financial crisis owing in part to defendants' refusal to reimburse it at rates at least as high as the Public Health Law rates. Defendants state that plaintiff's net worth is in excess of $80 million; hence, there is no

---

8. The fact that the 1973 S–52 Form has been approved by the I.R.S. (Watson Aff., Exh. 1) is not dispositive because the I.R.S. approved the Form on the basis of information supplied to it.

grave risk to plaintiff's financial stability. As plaintiff states, however, defendants' argument is frivolous in view of the fact that net worth does not pay expenses.

Because some material facts remain at issue, plaintiff's motion for summary judgment must be denied. However, it is clear that the only material issues of fact which remain in dispute, and which can be determined at an expedited trial, are the following: (1) the validity of those figures appearing on the 1972 S–52 Form submitted to the I.R.S. which differ from figures appearing on the October 1972 Form prepared for, but not submitted to, the I.R.S.; and (2) the proper accounting treatment of figures regarding the "volume index", research costs and settlements. Under Fed.R.Civ.P. 56(d), the Court has the power to issue an order of the pre-trial type provided under Fed.R.Civ.P. 16, specifying what facts exist without substantial controversy and what material facts are actually and in good faith controverted. Dundee Wine & Spirits, Ltd. v. Glenmore Distilleries Co., 238 F.Supp. 283, 290 (S.D.N.Y.1965).

Accordingly, counsel will prepare and submit an order in accordance with this opinion on 5 days notice within 10 days of the filing of this opinion.