**DUNKLEY REFRIGERATED TRANS-PORT, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. C–125–65.**

United States District Court
D. Utah.

May 9, 1966.

Richards, Bird & Hart and Lon Rodney Kump, Salt Lake City, Utah, for plaintiff.

Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for defendant United States.

Robert W. Ginnane, Gen. Counsel, and Manny H. Smith, Atty., I. C. C., Washington, D. C., for defendant I. C. C.

Before LEWIS, Circuit Judge, and CHRISTENSEN and KERR, District Judges.

KERR, District Judge.

This is an action to review a report and order of the Interstate Commerce Commission, Division 1, decided April 14, 1964,[1] granting Ralph F. Dunkley authority to transport in interstate or foreign commerce as a common carrier by motor vehicle, over irregular routes, frozen fruits, frozen berries, frozen vegetables, frozen potato products, and potato products. Plaintiff seeks to have that order set aside in part, and to have reinstated the commodity authorization of frozen foods and potato products, not frozen, as recommended by the hearing examiner. The jurisdictional requirements of 28 U.S.C. Sections 1336(a) as amended, 1398(a) as amended, 2284, and 2321–2325, and of 49 U.S.C. Section 305(g) are satisfied.

The question to be determined by this court is whether the Commission made adequate findings based on substantial evidence to support its finding that the public convenience and necessity requires the operation by plaintiff in interstate or foreign commerce, as a common carrier by motor vehicle, over irregular routes, of frozen fruits, frozen berries, frozen vegetables, and potato products, rather than of frozen foods and potato products, not frozen, as recommended by the hearing examiner. The geographical author-

1. Report and Order of the Interstate Commerce Commission, Division 1, decided April 14, 1964, in the proceeding entitled Docket No. MC–263 (Sub-No. 134) Garrett Freightlines, Inc., Extension-Frozen Foods, 98 M.C.C. 401, which proceeding embraced, among others, Docket No. MC–117823 (Sub-No. 4) Ralph F. Dunkley Extension-Frozen Foods (Re-entitled) Dunkley Refrigerated Transport, Inc., Extension-Frozen Foods, and Docket No. MC–117823 (Sub-No. 6) Ralph F. Dunkley Extension-Frozen Foods (Re-entitled) Dunkley Refrigerated Transport, Inc., Extension-Frozen Foods.

ity ordered by the Commission is not challenged.

Plaintiff operates a refrigerated trucking business over irregular routes in ten western states under and by virtue of authorities issued by the Interstate Commerce Commission. His principal place of business and terminal are located in Salt Lake City, Utah.

On November 30, 1961, in Docket No. MC–117823 (Sub-No. 4), plaintiff filed an application under Section 207 of the Interstate Commerce Act (49 U.S.C. § 307), for a certificate of public convenience and necessity authorizing operation as a common carrier by motor vehicle, in interstate commerce, over irregular routes in transporting frozen foods and potato products not frozen from (1) points in Idaho south of the southern boundary of Idaho County and from Ogden, Salt Lake City, and Provo, Utah, to points in Oregon, Washington, California, Wyoming, Nevada, Utah, and Arizona, and Denver, Colorado; and (2) from points in Oregon to points in Wyoming, Idaho and Utah. On January 22, 1962 plaintiff filed his application in Docket No. MC–117823 (Sub-No. 6), seeking identical operating authority from points in Washington to points in Wyoming, Idaho, Nevada, Utah and Arizona, and Denver, Colorado. Plaintiff's applications and eighteen similar applications were combined for hearing under the lead docket No. MC–263 (Sub-No. 134) Garrett Freightlines, Inc., Extension-Frozen Foods. Hearings in the consolidated proceedings were conducted by the Examiner of the Commission in February and March 1962, in Boise, Idaho, and Denver, Colorado.

The hearing Examiner's Report and Recommended Order of January 8, 1963, prescribed that plaintiff's requested authority to transport frozen foods and potato products, not frozen, be granted, except between points in Utah in Sub-No. 4. The recommended order imposed a restriction against joinder with previously granted operating rights for the purpose of performing through transportation from points in Washington and Oregon to points in California, and was made subject to the condition that, to the extent the recommended authority duplicated any other authority held by plaintiff, it was not to be construed as conferring more than a single operating right.

On April 14, 1964, the Commission, Division 1, issued its Report and Order granting the territorial authority sought by plaintiff as recommended by the Examiner except the Commission omitted Arizona as a destination state. The Commission also limited plaintiff's commodity authority to frozen fruits, frozen berries, frozen vegetables, frozen potato products and potato products, not frozen.[2] By order of September 2, 1964, the Commission, Division 1, acting as an Appellate Division, denied plaintiff's petition for reconsideration of the commodity description in the Commission's findings of the report and order. On October 29, 1964, the Commission also denied plaintiff's petition for a determination that an issue of general transportation importance was involved.

2. The Commission found that the present and future public convenience and necessity required the operation by plaintiff in interstate or foreign commerce, as a common carrier by motor vehicle, over irregular-routes (1) of potato products and frozen vegetables from points in Idaho south of the southern boundary of Idaho County to points in Utah, Oregon, Washington, California, Wyoming, Nevada, and Denver, Colorado; (2) of potato products from Ogden, Salt Lake City, and Provo, Utah, to points in Oregon, Washington, California, Wyoming, Nevada, and Denver, Colorado; and (3) of frozen fruits, frozen berries, frozen vegetables, and frozen potato products from points in Oregon to points in Utah, Idaho, and Wyoming, restricted against the performance of through transportation from points in Oregon to points in California; and (4) of frozen fruits, frozen berries, frozen vegetables, and frozen potato products from points in Washington to points in Wyoming, Idaho, Nevada, and Utah, and Denver, Colorado, restricted against the performance of through transportation from points in Washington to points in California. 98 M.C.C. 401.

■ We have limited ourselves to the scope of review authorized in actions of this nature:

"The function of the reviewing court is much more restricted. It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law." United States et al. v. Pierce Auto Freight Lines, Inc. et al., 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821 (1946).

Thus restrained, we have probed the record only to ascertain whether there is a "rational basis for the conclusions" of the Commission with respect to the commodity authority granted to the plaintiff. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934). We have found none.

The Commission adopted the statement of facts contained in the Examiner's report as being correct in all material aspects. It tacitly approved the Examiner's detailed discussion of the activities and transportation requirements of the supporting shippers, which the Commission merely summarized giving particular attention to certain shippers whom it considered typical.

With exceptions not here material, each application in this consolidated record sought authority to transport frozen foods and potato products, not frozen. The record is replete with evidence concerning the need for a broad commodity authority. The Examiner found that it is a common occurrence for vehicles making pickups to be loaded with a mixture of different frozen foods; that distribution patterns have changed in recent years and substantial volumes of frozen foods are presently moved directly to retail stores and other customers which buy in small quantities; and that carriers and shippers alike will benefit if partial deliveries of a wide range of frozen food products can be made at various and numerous points throughout a large destination area.

The Examiner also discussed the complicated situation involving the grandfather rights of certain shippers and the indecision in construing the term "agricultural commodities", "frozen vegetables", and "frozen fruits". He concluded that the problems of the applicants would not be solved by the final determination of the *Status* case [3] or any of the "grandfather" proceedings now on appeal. The Commission did not dispute the Examiner's reasoning that "any additional operating rights resulting from such grandfather proceedings or more liberal interpretation of Section 203(b) (6) of the Act would be too limited from a commodity authorization standpoint to provide the wide range of frozen food transportation service, along with the potato products, not frozen, which shippers of these commodities require".

The evidence adduced before the Examiner showed that new frozen products are continually introduced and that the carriers need a broad commodity description, such as frozen foods, in their certificates to accommodate the innovations. The evidence showed gaps in the existing authorities of the irregular route carriers used which would be filled by granting the applications. The Examiner found that General Foods Corporation, a user of plaintiff's service, requires carriers with authority to transport frozen foods in order to properly and completely meet its needs. The Examiner found, also, that it would be more convenient to Stokely-Van Camp, Inc., another user of plaintiff's services, if plaintiff had

---

3. Frozen Cooked Vegetables-Status, 81 M.C.C. 649.

authority to transport juice along with other commodities.

The supporting shippers manufacture or market, or expect to market, frozen potatoes, other frozen potato products and vegetables, processed meats, and propose to use the additional authority sought by plaintiff. They desire to be liberated from the problem of the coverage of "frozen vegetables" and "frozen fruits". Such evidence merits a broad commodity authority such as "frozen foods". Willis Shaw Frozen Express, Inc., Extension-California, No. MC–117119 (Sub-No. 178), decided November 30, 1965, served December 8, 1965 (unpublished).

The Commission recognized that the consolidated record evidenced "the shippers desire that the carriers serving them be awarded a commodity description broad enough to enable them to transport each of the food products they handle". The "typical" shippers considered by the Commission were Idaho Potato Processors, Inc., which supported plaintiff, and J. R. Simplot Co., General Foods Corporation and Stokely-Van Camp, Inc., who, though not supporters of Dunkley, had made use of Dunkley's services. The Commission echoed the Examiner's finding that the carriers serving General Foods Corporation "must be authorized to transport a sufficiently broad category of commodities to haul mixed shipments of the shipper's traffic".

It is apparent that the Commission recognized the evidentiary factors which would support a finding that a sufficiently broad commodity described as "frozen foods" was required by the supporters and users of plaintiff, and yet did not make such a finding. Without evidence to support a limited commodity, the Commission so restricted the commodity authority which it granted plaintiff. The Commission did not make any findings to support its grant of the lesser commodity description in lieu of the broad commodity description granted by the Examiner. It referred to a "scheme" to which each application should conform instead of granting the broad commodi-

ty recommended by the Examiner. That "scheme", however, was not supported by the evidence for the obvious reason that it included only potato products, frozen and not frozen, frozen vegetables, frozen fruits and frozen berries. In its "scheme" to limit the commodity description, the Commission did not consider the copious evidence of the need and necessity for authority to transport frozen foods other than potatoes, vegetables, fruits and berries; it did not define the scope of frozen vegetables, fruits and berries. It disregarded the requirements of its selected "typical" suppliers.

It is important also to note that the Commission did not make any finding concerning the fact that there were no effective protestants to Dunkley's applications to transport frozen foods and potato products, not frozen. Zero was a protestant only insofar as the destination state of Arizona is concerned, and Exley protested Dunkley's application for frozen food authority from points in Washington to Arizona. The Commission omitted shipments to Arizona in its grant to Dunkley and Dunkley is not objecting to that portion of the Commission's order. Those protestants, therefore, are immaterial in the present action. The other shippers, namely, Garrett, IML, PIE, and Consolidated, who protested Dunkley's application, raised the question of fitness. The Examiner concluded that Dunkley was fit and able, financially and otherwise, properly to conduct its proposed operations and the Commission affirmed that conclusion. The issue of fitness, therefore, is not before this court, and the four protestants who raised it merit no consideration in this review.

The Commission made no reference to the temporary authority which it granted to Dunkley on March 6, 1963, to transport frozen foods and potato products, not frozen. On that date the Commission found that there was "an immediate and urgent need for the motor carrier service described * * * and that there is no carrier service available capable

of meeting such need * * *." [4] The Commission did not explain, qualify, or refute that finding. There is nothing in the record evidencing a change of conditions or circumstances between March 6, 1963, and April 14, 1964.

Based upon the examination of the entire record, it is the conclusion of this court that the Commission's finding that the commodity authorization should be limited to frozen fruits, frozen berries, frozen vegetables, and potato products, is not supported by adequate subsidiary findings and that the ultimate conclusion is not supported by substantial evidence.

It is, therefore, the conclusion of this court that the Commission order with respect to the commodity authorization must be set aside. The case is remanded to the Commission for further proceedings in conformity with this opinion.

4. Docket No. MC–117823, SUB 14 TA, Ralph F. Dunkley, doing business as Dunkley Distributing Company, Salt Lake City, Utah.