637 F.2d 757
 GRAVES TRUCK LINE, INC. and Santa Fe Trail Transportation
Co., Petitioners,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
and
Winters Truck Line, Inc., Intervening Respondent.
 No. 79-1154.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 12, 1980.
 
 Larry E. Gregg, Topeka, Kan. (John E. Jandera, Topeka, Kan., with him on the brief), of Jandera & Gregg, Topeka, Kan., for petitioners.
 Cecelia E. Higgins, Atty. Washington, D. C., (John H. Shenefield, Asst. Atty. Gen., Robert B. Nicholson, Asst. Chief, Appellate Section, Antitrust Division, Robert Lewis Thompson, Atty., Dept. of Justice, Richard A. Allen, Gen. Counsel, and Henri F. Rush, Associate Gen. Counsel, Washington, D. C., with her on the brief), for respondents.
 Charles J. Kimball of Kimball, Williams & Wolfe, P. C., Denver, Colo., for intervening respondent.
 Before McWILLIAMS and BARRETT, Circuit Judges, and TEMPLAR, District Judge*.
 McWILLIAMS, Circuit Judge.
 
 
 1
 Graves Truck Lines, Inc. and Santa Fe Trail Transportation Co. petition this Court to review, and set aside, an order of the Interstate Commerce Commission granting a Certificate of Registration to Winters Truck Line, Inc. Jurisdiction is based on 28 U.S.C. § 2321 and 28 U.S.C. § 2342, as amended.
 
 
 2
 Graves and Santa Fe are Kansas corporations with their principal places of business in Salina and Wichita respectively. Both are motor common carriers engaged in interstate commerce.
 
 
 3
 Winters, intervenor in the present proceeding, is a Kansas corporation with its principal place of business in Wichita. Winters is also a motor common carrier and operates under numerous certificates issued by the Kansas Corporation Commission (KCC) authorizing transportation of intrastate shipments. In connection with certain of the certificates from the KCC, Winters has also obtained Certificates of Registration from the ICC.
 
 
 4
 Winters also holds a certificate of public convenience and necessity (Sub-No. 2) from the ICC. This particular certificate is the root of the present controversy. Sub-No. 2, issued by the ICC on January 11, 1968, authorized the transportation of interstate shipments between various cities and towns all located in Kansas and, in particular, authorized the transportation of interstate shipments "(B)etween Anthony, Kansas and Hardtner, Kansas, serving the intermediate points of Hazelton and Kiowa, Kansas. From Anthony over Kansas Highway 14 to Hardtner, and return over the same route."
 
 
 5
 49 U.S.C. § 10931 provides a method whereby a motor common carrier providing transportation entirely in one state may provide transportation subject to the jurisdiction of the ICC without obtaining a certificate of public convenience and necessity from the ICC. That statute appears as an Appendix to this opinion. Under that statute a motor carrier operating entirely in one state, which has applied for and obtained a certificate of public convenience and necessity from the state authority permitting intrastate motor transportation, may also request that the same state authority make a determination that the public convenience and necessity require that the carrier be permitted to transport interstate shipments over those same routes. The statute further provides that before a motor carrier actually provides such interstate transportation, it shall file with the ICC, inter alia, the certificate issued by the state authority, and that the ICC shall then issue a Certificate of Registration authorizing the carrier to provide such interstate transportation.
 
 
 6
 Winters sought to avail itself of the procedures set forth in 49 U.S.C. § 10931. It applied to the KCC for an extension of its intrastate authority and for a determination regarding the transportation of interstate shipments over such extended authority. Specifically, Winters sought to transport both intrastate and interstate shipments (1) between Wichita, Kansas and Garden City, Kansas and points within ten miles thereof; (2) between Wichita, Kansas and Liberal, Kansas, and points within ten miles thereof; and (3) between Liberal, Kansas and points within ten miles thereof and Garden City, Kansas and points within ten miles thereof.
 
 
 7
 Winters' application to the KCC for such extended authority was opposed by Graves and Santa Fe, as well as two other motor carriers which, however, later withdrew from the proceeding. The objection of Graves and Santa Fe was two-fold: (1) Winters did not operate entirely within the State of Kansas, and therefore could not proceed under 49 U.S.C. § 10931, which, as indicated, is limited in its application to carriers which did operate entirely within one state; and (2) public convenience and necessity did not require a grant of additional authority. The KCC rejected both these objections and on August 4, 1978, granted Winters' application. Winters next made application to the ICC for a Certificate of Registration. On October 3, 1979, over the objections of both Graves and Santa Fe, the ICC granted Winters a Certificate of Registration. Graves and Santa Fe now petition this Court to review, and set aside, the order of the ICC granting Winters a Certificate of Registration.
 
 
 8
 In this Court, Graves does not pursue its earlier contention that Winters failed to establish public convenience and necessity. Rather, the only ground urged here is that the order of the ICC granting Winters a Certificate of Registration must be set aside because Winters did not provide transportation entirely in one state at the time it initiated its application before the KCC and therefore the procedures provided for in 49 U.S.C. § 10931 were not available to Winters.
 
 
 9
 Graves' argument in this Court is based on Winters' Sub-No. 2 authority. As above stated, that certificate issued by the ICC in 1968 authorizes Winters to transport goods in interstate commerce between points in Kansas, including the towns of Kiowa (population 1,543) and Hardtner (population 356), each of which is located near the Oklahoma border. The "commercial zones" of both Kiowa and Hardtner extend into Oklahoma.[1] Accordingly, Graves argues that under the Sub-No. 2 certificate Winters had authority to serve points in Oklahoma, as well as Kansas, and thus was not a single-state carrier at the time it applied to the KCC.
 
 
 10
 Winters, the intervenor here, asserts that in fact it has never served any point in Oklahoma, and thus its single-state status is unimpaired. The position of the ICC is somewhat different than Winters' position. The ICC argues that any possible "defect" in this regard was "cured" by the intervening action of the ICC on July 12, 1978. Although the record before us does not contain the ICC order of July 12, 1978, it is apparently agreed to by the parties that the July 12 order restricted the Sub-No. 2 certificate by prohibiting service to points in the Kiowa and Hardtner commercial zones which are outside of Kansas.[2] As a result, argues the ICC, Winters is undisputedly a single-state carrier.
 
 
 11
 To fully understand Graves' argument, it is desirable to review the proceedings in chronological order. Winters' Sub-No. 2 certificate was issued by the ICC in 1968. Winters filed its application for extended intrastate authority, and corresponding interstate authority, with the KCC in September, 1977. Hearings on that application were held on March 13, 14, and 16, 1978, and resumed on May 11 and 12, 1978. On July 12, 1978, the ICC issued the order restricting Winters' authority under Sub-No. 2 to the State of Kansas. On August 4, 1978, the KCC entered an order granting Winters' application. The KCC later denied Graves' request for a rehearing. On October 18, 1978, Winters filed an application for a Certificate of Registration with the ICC, basing its application on the KCC grant of authority. In an order served on January 30, 1979, the ICC granted a Certificate of Registration to Winters. Graves then filed a petition for review in this Court. The case was later remanded to the ICC for further consideration. In a decision served on October 12, 1979, the ICC affirmed its prior decision granting Winters a Certificate of Registration. In so doing, the ICC held that inasmuch as Winters was quite clearly a single-state carrier when it filed its application for a Certificate of Registration with the ICC, the ICC had jurisdiction to issue a Certificate of Registration under the provision of 49 U.S.C. § 10931; hence Graves' motion to dismiss on the ground that Winters was a multiple-state carrier was properly denied. In the October 12, 1979, decision, the ICC unequivocally stated that the Sub-No. 2 certificate was by the order of July 12, 1978, restricted to service in Kansas.
 
 
 12
 The sole question is whether, under the circumstances described above, the ICC had jurisdiction to grant Winters a Certificate of Registration pursuant to the provisions of 49 U.S.C. § 10931. The question is said to be one of first impression. It is Graves' position that the ICC did not have the power, or jurisdiction, to grant Winters a Certificate of Registration because the KCC did not itself have jurisdiction under 49 U.S.C. § 10931 to hear Winters' application for interstate authority. In this latter regard Graves argues that when Winters applied to the KCC for expanded intrastate and interstate authority it was not operating entirely in Kansas, but by virtue of Sub-No. 2 had authority under the "commercial zone" doctrine to operate in Oklahoma, and therefore did not come within the requirements of 49 U.S.C. § 10931. The fact that prior to the date of the order of the KCC granting Winters expanded intrastate and interstate authority (August 4, 1978), Sub-No. 2 authority was restricted by the ICC order of July 12, 1978, to service in Kansas only is said to be immaterial. We do not agree with this line of argument.
 
 
 13
 When Winters made application to the KCC for expanded authority it obviously was of the view that it had authority to operate only in Kansas, and therefore could avail itself of the procedure authorized by 49 U.S.C. § 10931.[3] On hearing before the KCC, the question as to whether Winters also had authority to operate in Oklahoma, as well as Kansas, was raised. The KCC did not make any determination or enter its order until that particular issue was cleared up once and for all by the ICC's order of July 12, 1978, which restricted Winters' authority to Kansas. When the KCC issued its order on August 4, 1978, Winters was most certainly providing transportation entirely in one state, as required by 49 U.S.C. § 10931. In such circumstance we are of the firm view that the KCC had jurisdiction to enter its order of August 4, 1978, and that the ICC also had jurisdiction to enter its order granting Winters a Certificate of Registration. We believe our holding is consonant with both the spirit and the letter of 49 U.S.C. § 10931.
 
 
 14
 As has been stated, in this Court Graves only advances one ground for setting aside the order of the ICC granting Winters a Certificate of Registration, namely, the ICC had no jurisdiction to issue Winters a Certificate of Registration because the KCC itself had no jurisdiction to hear Winters' request for interstate authority. Having considered, and rejected, that particular argument, we need not here consider the suggestion by the ICC that it has jurisdiction to issue a Certificate of Registration if the applicant therefor demonstrates single-state status as of the time it makes application to the ICC for a Certificate of Registration.
 
 
 15
 Order affirmed.
 
 APPENDIX
 
 16
 § 10931. Motor common carriers providing transportation entirely in one State
 
 
 17
 (a) A motor common carrier may provide transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter II of chapter 105 of this title without a certificate issued by the Commission under section 10922 of this title, when-
 
 
 18
 (1) the carrier provides transportation entirely in one State;
 
 
 19
 (2) the carrier is not controlled by, controlling, or under common control with a carrier providing transportation outside the State;
 
 
 20
 (3) the carrier has applied for, and has been issued, a certificate of public convenience and necessity by the State authority having jurisdiction to issue such a certificate, permitting the carrier to provide intrastate transportation by motor vehicle; and
 
 
 21
 (4) the intrastate certificate was issued after, and the certificate states that-
 
 
 22
 (A) notice was given to interested parties through publication in the Federal Register of the filing of the application by the carrier and the desire of the carrier to provide transportation otherwise under the jurisdiction of the Commission within the limits of the certificate issued by the State authority;
 
 
 23
 (B) reasonable opportunity to be heard was given; and
 
 
 24
 (C) the State authority considered and found that the public convenience and necessity require that the carrier be permitted to provide transportation under the jurisdiction of the Commission within limits that do not exceed the scope of the certificate issued by the State authority.
 
 
 25
 (b) An interested party that opposed issuing the certificate to a motor common carrier in a proceeding before a State authority may petition the Commission for reconsideration of a decision of the State authority. On reconsideration, the Commission, based on the record before the State authority, may affirm, reverse, or change that decision, but only with respect to the transportation subject to Commission jurisdiction.
 
 
 26
 (c) The Commission may require, before a motor common carrier provides transportation authorized under this section, that-
 
 
 27
 (1) a certified copy of the carrier's intrastate certificate and other appropriate information be filed with the Commission; and
 
 
 28
 (2) the carrier comply with applicable requirements established by the Commission.
 
 
 29
 (d)(1) The Commission shall issue a certificate of registration to a motor common carrier authorizing the carrier to provide transportation under this section. The authority granted under the certificate is subject to all other applicable provisions of this subtitle. Except as otherwise provided in this subsection and subchapter III of chapter 113 of this title, the certificate of registration may be transferred if it is transferred with the intrastate certificate. Transfer of the intrastate certificate without the certificate of registration revokes the certificate of registration.
 
 
 30
 (2) The certificate of registration issued by the Commission is valid as long as the motor common carrier provides transportation entirely in the State from which it received its intrastate certificate and is not controlled by, controlling, or under common control with, a carrier providing transportation outside the State.
 
 
 31
 (e)(1) On the 180th day after the termination, restriction in scope, or suspension of the intrastate certificate, the authority granted under this section to provide transportation is revoked or likewise restricted unless the intrastate certificate is renewed or reissued or the restriction is removed by that 180th day.
 
 
 32
 (2) Transportation authorized under this section may be suspended or revoked by the Commission under section 10925 of this title. Pub.L. 95-473, Oct. 17, 1978, 92 Stat. 1416.
 
 
 
 *
 Honorable George Templar of the United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 A "commercial zone" is a "zone that is adjacent to, and commercially a part of" a municipality. 49 U.S.C. § 10526(b)(1). Commission regulations generally determine the size of commercial zones according to the population of the municipality. 49 C.F.R. 1048.101. When the municipality has a population of less than 2,500, its commercial zone consists of all unincorporated areas within three miles of its corporate limits and all of any other municipality any part of which is within three miles of the corporate limits of the base municipality. 49 C.F.R. § 1048.101(c)(1)
 
 
 [2]
 Winters had a right to have its Sub-No. 2 certificate specifically restricted to single-state authority pursuant to the ICC's decision in Commercial Zones and Terminal Areas, 54 M.C.C. 21,103 (1952). The ICC's decision to limit such authority must be given deference by this Court. See, Koppel, Inc. v. United States, 612 F.2d 1264 (10th Cir. 1979)
 
 
 [3]
 Under 49 U.S.C. § 10931(a)(3), a carrier such as Winters must first obtain a certificate of public convenience and necessity issued by the state authority having jurisdiction to do so. Under Kan.Stat.Ann. 66-1, 114 (Supp.1979), the State Corporation Commission of Kansas was empowered to issue a certificate in the present case. Furthermore, the KCC has full power, authority and jurisdiction to supervise and control all common carriers doing business in Kansas and the power to do all things necessary and convenient for the exercise of such power, authority and jurisdiction. Kan.Stat.Ann. 66-101 (1972); Stanford v. Gas Service Company, 346 F.Supp. 717, 721-22 (1972)